Wood, C. J.
From the testimony submitted, it is clear that Lockwood, when he entered into his agreement with the plaintiff and Tuttle acted in the most perfect good faith. He did not doubt his authority, but believed himself fully authorized to make the contract. He had been a long time in the employ of the company as its active agent. The plaintiff and Tuttle supposed the powers of Lockwood, the commissioner *of contracts, were ample to bind the company by any agreement. In this, both parties were mistaken. No provision is found, either in the charter or bylaws of this corporation, to sanction the sale of stocks, or the realty of the defendant, by the commissioner of contracts. Lockwood appears to have acted in that way, which in his ow^i judgment, was best calculated to relieve the necessities and advance the interests of the company. Between him, the plaintiff and Tuttle, there was a mutual mistake, however, as to the extent of his au *585 thority, and this mistake has placed $1,000 of the money of the plaintiff and Tuttle in the hands of tho defendant. The defendant now refuses to execute the agreement, which was the entire consideration upon which this advance of money was made. Will the law sanction such gross injustice ? Wo think not; and whether we look upon the transaction as an advance of money on a consideration which has entirely failed, or as money paid through mistake, the ordinary principles of common honesty require the defendant to place the plaintiff and Tuttle in statu quo, or, otherwise, to admit and execute the agreement. It appears to us the sum allowed in money, which the defendant ought ex cequo et bone to refund; and, as such, the law raises an implied promise to repay principal and interest to the plaintiff.
It may be admitted that Lockwood, by exceeding his authority, made himself personally responsible to the plaintiff and Tuttle; and the right of recovery, in the case at bar, remains, nevertheless, unimpaired. It is the election of one of two remedies, or the plaintiff may perhaps presume both, though he can receive, but one satisfaction. As Lockwood acted honestly, it is not a well-founded complaint, that this corporation is selected as the defendant. It is, indeed, no more than abstract justice that Lockwood should be relieved from vexatious litigation, so long as the plaintiff can be made whole by a suit against the company.
It is said the contract is void on the ground of fraud. In other words, that the subscription for stock is absolute on its face, and any secret agreement inconsistent with it, operates as % fraud on the state, other stockholders, and creditors of the company. The general principle is admitted, but we can not perceive-the application .of the argument, when it is sought to be enforced upon the case at bar. The state loaned its credit to this corjDoration, before this stock was subscribed. It is said, it is true, that, while the plaintiff’s and Tuttle’s subscription was standing on tho books of the company, the state made further advances under tho act of March 24,1837, and that the stock of the plaintiff and Tut. tie was taken into view, in making such advances. The testimony on this point, however, is by no means satisfactory. These loans of credit were converted into such stock under the act of 1843) and the state then, for the first time, became a stockholder in this-corporation.
Under these circumstances, we do not perceive that the contract *586 to purchase the lands of the company within six month's from the date, or at any indefinite period, and pay in certificates of stocky etc., can operate as a fraud, either actual or constructive, upon the rights of the state, acquired in whole or in part, on the strength of the subscription of the plaintiff and Tuttle. They were nob bound to know the state was, thereafter, to become a stockholder. It is unreasonable to require of any man to look into futurity and scan what will be the mighty wisdom of Ohio legislation. Learned judges find it difficult, not unfrequently, to declare what it is; and bold and rash, indeed, is any man who attempts to predict what it will be.
When this subscription for stock was made, the act of 1837, under which the state was authorized to make further advances, was not an embryo — nor was the act of 1843, under which the state became a stockholder. The conduct of the plaintiff and Tuttle, therefore, being perfectly honest, fair, and open, in fact can not, in our view, be considered as mala fides, in law, so far as any right of .the state is concerned. One or two other stockholders only subscribed for stock after the plaintiff and Tuttle, and he or they, with full knowledge of this agreement; and he or they are therefore not defrauded; and, as to creditors, none are shown to exist against the company. It *will be in time, however, to extend the protecting arm of this court to the state, other stockholders and creditors, when they are parties and seek such protection at our hands.
It is very clear to us, that the sale of the stock to the plaintiff and Tuttle, and the right to purchase the defendant’s lands, were designed by Lockwood, the plaintiff and Tuttle, to form one entire transaction; and it would be most unjust to permit the defendant to divide it into parts, and hold on to the money with a most deadly grasp, while the entire condition upon which it was received, is repudiated with a miser’s scorn and a usurer’s contempt.
Judgment is therefore rendered, on the verdict for the plaintiff, for both principal and interest.