## D. W. EAVES v. PHILIP ESTES, *et al.*

FIXTURES; *Steam-Engine; Chattel Mortgage; Intent of Parties.* Where E. & Co. built a steam-engine for the mill of K., and while it was still at their shop took a chattel mortgage on it, with a stipulation of their right to take possession of the same, whether it was affixed to the freehold or not, *held*, that where the facts leave the court in doubt as to whether the engine had by its attachment to the realty become a fixture, the intention of the parties, as evinced by the chattel mortgage, might be looked to as controlling in the determination of the character of the property; and that the court below properly held that it remained personal property, and subject to the chattel mortgage.

### *Error from Leavenworth District Court.*

REPLEVIN, brought by *Estes & Co.*, as partners, as the "Great Western Manufacturing Co.," to recover the possession of a steam-engine. Said engine was manufactured by *Estes & Co.* for one Philip Kœhler, to be put up and used in the Leavenworth Mills then owned by Kœhler. It was so put up and used in said mills; but before taking it from the shop of the builders Kœhler gave *Estes & Co.* a chattel mortgage on the engine. Said mortgage was duly recorded, and contained the following stipulation:

"And if the said parties of the second part shall at any time deem themselves insecure, or in default of the payment of the said note, the said parties may take possession of the said engine, and sever and remove the same from the mill in which the same may or shall be placed, whether the same shall be attached to the realty or otherwise, and disconnect the same from the mill-machinery, and remove the same; and that until the payment of the said note the said engine shall be deemed and taken to be a chattel wherever placed, set, or used by the party of the first part, his heirs or assigns. In witness," etc.

Previous to the execution of said chattel mortgage, and the placing of said engine in said mills, said mills and the lots on which they were built were mortgaged; and this mortgage, and while the debt due from Koehler to *Estes & Co.* remained unpaid, was foreclosed, the mills and lots sold under the foreclosure decree, and purchased by *Eaves*. Failing to get

their money *Estes & Co.* undertook to remove and take possession of the engine, but *Eaves* refused to permit them to do so, claiming that the engine was a part of the realty. The case was tried at the January Term 1872. The district court found and gave judgment in favor of the plaintiffs, and *Eaves* brings the case here.

*Byron Sherry*, for plaintiff in error, contended that "all improvements on real property inure to the benefit of the mortgagee," and cited *Powell v. Manufg. Co.*, 3 Mason, 459; *Winshon v. Merchants Ins. Co.*, 4 Metc., 306; 3 Md. Ch., 189; 6 Greenleaf, 154; 2 Watts & Serg., 115; 14 Pick., 386.

*Hurd & Birnie*, for defendants in error:

The main, and as it seems to us, the only question in the case is, did the engine in controversy, after being placed in the mills by Kœhler, so far become a part of the realty as to be subject to the prior mortgages and liens upon the land on which the mill was built, as against the defendants in error? The following authorities answer this question in the negative: *Ford v. Cobb*, 20 N. Y., 344; *Crippen v. Morrison*, 13 Mich., 24, 35; *Lawrence v. Kemp*, 1 Duer, 363; *Smith v. Benson*, 1 Hill, 176; *Penton v. Robart*, 2 East, 88; *Elwes v. Maws*, 3 East, 38; *Holmes v. Tremper*, 20 Johns., 28; *Vorhies v. McGinnis*, 46 Barb., 242; *Holmes v. Bell*, 3 Cushing, 322; *Wash v. Johnson*, 25 Geo., 331; *Gale v. Ward*, 14 Mass., 351; *Swift v. Thompson*, 9 Conn., 63; *Teaff v. Hewitt*, 1 Ohio St., 511; *Fortman v. Goepper*, 14 Ohio St., 558. And see also, 18 N. Y., 28; 4 Mass., 514; 7 How. Pr. Rep., 251; 14 Barb., 662; 28 Vt., 428, 436; 2 Am. Lead. Cas., 746 to 751.

By our statutes, the mortgagee is entitled to the immediate possession of the chattel mortgage. Gen. Stat. 1868, page 584, §15. The mortgage of defendants in error was duly filed and recorded as required by the statute, and plaintiff in error had constructive, as well as actual notice thereof, at the time of the sale under the execution by the sheriff of Leavenworth county.

The opinion of the court was delivered by

KINGMAN, C. J.: The defendants in error manufactured a steam-engine for Philip Kœhler, and before it left their shop took a chattel mortgage upon it for the payment of the purchase-money, with a stipulation in the mortgage, of their right to take possession of the engine whenever they might deem themselves insecure, or in default of payment, and remove the same from the mill, whether it should be attached to the realty or otherwise.    Eaves, the plaintiff in error, having become the purchaser of the mill and lots under a foreclosure of a mortgage thereon made prior to the placing the engine therein, claims the engine as a part of the freehold, as against the rights of defendants in error as mortgagees. Eaves had actual and constructive notice of the existence of the mortgage and claim of defendants in error when he bought the property.   The district court held that the defendants in error were entitled to the engine under their mortgage, and this decision presents the only question in the case. As a general rule, improvements on real property inure to the mortgagee as part of his security; but whether any given piece of property becomes so attached to the freehold as to make it a part thereof, is frequently a question of great difficulty.    From the very nature of things it is oftentimes most embarrassing to determine when a piece of property, personal in its original character, becomes a fixture by reason of its use in connection with the freehold.   And the best guides for the determination of such questions, are, to ascertain whether the property is actually annexed to the freehold, to consider the use to which it is appropriated in connection with the freehold, and what was the intention of the party—whether it was his purpose to make it a permanent accession to the freehold, or otherwise, "this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." *Teaff v. Hewitt*, 1 Ohio St., 530.    Testing

this case by these principles, and we have no doubt that the decision of the district court was correct. The engine when built, and at the shop of builders, was unquestionably personal property. Under the light of adjudicated cases, and having no regard to the terms of the chattel mortgage, it may well be doubted whether it ever became a part of the realty as between vendor and vendee. See *Walker v. Sherman,* 20 Wend., 636; *Vanderpool v. Van Allen,* 10 Barb., 157; *Holmes v. Tremper,* 20 Johns., 29; *Swift v. Thompson,* 9 Conn., 63; *McKim and Kennedy v. Mason,* 3 Md. Ch., 189; *Fortmen v. Goepper,* 14 Ohio St., 564. But when we consider the purpose of the parties, as evinced by the mortgage, to make the engine retain the character of a chattel, regardless of the manner of its attachment to the mill, and as the mortgage violated no principle of law, wrought no injury to the rights of any, and was in the interest of trade, we have no doubt that the engine continued to be personal property. See the cases referred to in the brief of defendants in error. It is not intended to decide that parties can by any arrangement make property either real or personal as they may choose. "It will readily be conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and cannot in general be changed by the convention of the parties. Thus, it would not be competent for parties to create a personal chattel-interest in a part of the separate bricks, beams, or materials of which the walls of a house are composed. Rights by way of license might be created in such a subject, but it could not be made alienable as chattels, or subjected to the general rules by which the succession of that species of property is regulated. But it is otherwise with things which being originally personal in their nature are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction of, or material injury to, the things real with which they are connected, though their connection with the land or other real estate is such that in the absence of an agreement, or of any special relation between the parties in interest, they would be

part of the real estate." *Ford v. Cobb*, 20 N. Y., 348. So in this case, if the manner of the attachment of the engine to the mill is such as to leave the mind in doubt or uncertainty as to whether it became a part of the freehold, we may look to the intention of the parties as controlling. This is constantly done in cases between landlord and tenant, where improvements for the benefit of trade are held as personalty, which as between vendor and vendee would pass as realty. It is said that the tenant could not have intended the improvement as an accession to the freehold, and this intention is derived solely from his limited estate in the rented property. In this case the parties have declared that the engine shall retain its character of personalty; and the facts in the case do not overcome the inference drawn from the contract. It is not an inference drawn solely from the relation of the parties, or the nature of the estate, but a positive stipulation made by the parties. The intent is not inferred from facts, or left in doubt. That intent was that the engine should continue personal property, and we think it retained that character; and therefore the judgment is affirmed.

All the Justices concurring.