Filed Jan. 29, 1889.

No. 12,171.

### BINKLEY v. FORKNER ET AL.

FIXTURES.—*Nature of Articles.*—*Manner of Annexation.*—*Intention of Party Making the Annexation.*—*Policy of the Law.*—The nature of the articles, and the manner in which they are affixed, and the intention of the party making the annexation, together with the policy of the law, are controlling factors in determining whether an article, which may or may not be a fixture, becomes part of the realty by being annexed to the freehold.

SAME.—*Machinery.*—*Intention of Purchaser.*—*Chattel Mortgage.*—*Rights of Innocent Purchasers.*—When a person purchases machinery with a view that it shall be annexed to or placed in a building of which he is the owner, and executes a chattel mortgage on the property so purchased, he thereby evinces his intention that the property shall retain its character as personalty, regardless of the manner in which it may be annexed to the freehold, and it will be so regarded where the rights of innocent purchasers are not involved.

Binkley *v.* Forkner *et al.*

SAME.—*Chattel Mortgage.—Provision Upon Default of Payment.—Effect of.*—
A provision in a chattel mortgage, that, upon default of payment of the
mortgage debt, the mortgagee may take possession of the mortgaged
chattels and sell the same, is, if anything beyond the mortgage itself was
needed, equivalent to an express agreement that the property shall
continue to be regarded as personalty.

SAME.—*Prior Real Estate Mortgage.—Right of Removal as Against.*—A chat-
tel mortgage is effectual to preserve the character of the mortgaged chat-
tels as against a mortgage on the realty executed prior thereto, if the
chattels can be removed without injuring or impairing the value of the
real estate or the buildings thereon. If the detachment would occasion
some diminution in the value of the realty, as it would have stood had
the attachment not been made, then the depreciation must be made
whole, and the rights of the parties adjusted according to the equity
of the case.

SAME.—*Subsequent Real Estate Mortgage.— When Subject to Prior· Chattel
Mortgage.*—Where, by the language of a subsequent mortgage on real es-
tate, chattels theretofore affixed to the realty are recognized and treated
as personal property, such mortgage will be subject to a prior chattel
mortgage on the same.

PRACTICE.—*Transcript.—Copies of Instruments.*—When a paper is once copied
into the transcript, it is not necessary to copy it again when introduced
into subsequent parts of the record, provided it be so referred to that
it can be identified with certainty.

From the Marion Superior Court.

*V. Carter*, for appellant.

*A. B. Cole, A. C. Harris* and *W. H. Calkins*, for appellees.

MITCHELL, J.—On the 3d day of March, 1883, John M.
Kemper, then a resident of Marion county, purchased of
Eckart Bros. a tract of land, embracing two acres, in Du-
bois county, for the consideration of one thousand dollars,
upon which to locate a heading factory. He executed to the
vendors two notes for five hundred dollars each, in consider-
ation of the purchase-price, and secured them by a mortgage,
bearing date March 7th, upon the real estate purchased. The
mortgage was duly recorded. Before purchasing the land,
Kemper had given an order to Hadley, Wright & Co., man-
ufacturers, of the city of Indianapolis, for an engine and

boiler, and for saws, shafting, pulleys, and other machinery, to be used in the factory. At the time the order was given Kemper told the manufacturers that he had found ground which he could lease upon which to place the mill he contemplated erecting in which to use the machinery. On the 5th day of March, 1883, while the machinery was yet in the possession of Hadley, Wright & Co., they having agreed to deliver it to Kemper on board the cars at Indianapolis, the latter executed to the former a chattel mortgage in the usual form to secure the purchase-price of the machinery, which aggregated one thousand seven hundred dollars. It was orally agreed by Kemper that the machinery should be treated as personal property until the notes were paid, and the mortgage contained a stipulation authorizing the mortgagees, in case of default, to take possession of the mortgaged chattels wherever found, etc. This mortgage was duly recorded in Marion county where Kemper resided. The latter erected a building upon the land conveyed to him by the Eckarts, the main part of which was fifty-two by twenty-eight feet, with an engine room adjoining twenty-four by twenty-four feet. The building consists of a light frame, boarded up and down, with a shingle roof, and rests upon posts or blocks, which rest on or set in the ground. It is estimated to be worth two or three hundred dollars. The forty-horse power stationary engine, and the boiler, which was four by twenty feet, weighing four thousand pounds, were placed in or upon brick foundations in the usual manner, and were bolted into the masonry in which they were imbedded. The saws were fastened on foundations imbedded in the soil, there being an earth floor. The shafting and pulleys were secured to the building in the customary manner, and so, also, was the iron chimney or smoke-stack held in place. Other customary conveniences and appointments for conducting the business were provided. It appeared in evidence that the machinery could be removed without material injury to the building, except the masonry which supported the engine and boiler,

and without material detriment to the machinery, and that the value of the real estate would not be appreciably diminished otherwise than by the absence of the machinery.

After the building had been completed and the factory put in operation, Kemper executed a second mortgage on the real estate to John L. Forkner and others, to secure a debt due the Dubois County Bank. In this last mortgage the real estate is properly described by metes and bounds, and after the description of the same we find the following : "And said mortgagor also mortgages and warrants all machinery and appurtenances, including steam boiler, engine, saws, trucks and all tools in and about and necessary to carry on the heading factory situate on said real estate, and that none of said machinery or tools are to be removed until this mortgage is paid and satisfied."

The controversy here is between the appellant, Binkley, the assignee of the notes secured by the chattel mortgage to Hadley, Wright & Co., and the Eckarts and the Dubois County Bank, who were made parties defendants by Binkley, to a suit brought in the superior court of Marion county to foreclose the chattel mortgage.

On the one hand the insistence is, that, notwithstanding the annexation of the machinery to the real estate as already described, it retained the character of personalty in consequence of the prior chattel mortgage, and the contemporaneous agreement that it should be treated as personal property until the notes given for the purchase-price to Hadley, Wright & Co. had been paid.

Admitting that Hadley, Wright & Co. held a valid chattel mortgage upon the machinery prior to its annexation to the realty, the result to which the argument leads, on the other hand, is, that, because the machinery was annexed to the freehold by the owner, and was peculiarly adapted to be used in connection with the building in which it was placed, the law will raise a conclusive presumption that the owner intended it as a permanent accession to the land. Hence the

conclusion insisted upon is, the character of the machinery as personal property came to an end when it was annexed to the land, and that of realty became inevitably fixed upon it.

The question thus presented has been the subject of much discussion, and the result deducible from the reported cases is not in every respect harmonious, or of so definite and precise a character as could be desired. Very much depends upon the relation which the persons between whom the question arises sustain toward each other, whether it be that of personal representative and heir of a deceased person, landlord and tenant, vendor and vendee, mortgagor and mortgagee or some other, which may give a peculiar character to the case. While some rules of general application have been formulated, in the very nature of the subject each case must in some degree be controlled by the varying circumstances peculiar to it.

The united application of three requisites is regarded as the true criterion of an immovable fixture : (1) Real or constructive annexation of the article in question to the freehold. (2) Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. (3) The intention of the party making the annexation to make the article a permanent accession to the freehold. *Teaff* v. *Hewitt*, 1 Ohio St. 511, 530 ; *Potter* v. *Cromwell*, 40 N. Y. 287 ; Ewell Fixtures, 21 ; Tyler Fixtures, 114 ; *McRea* v. *Central Nat'l Bank*, 66 N. Y. 489.

According to the elementary rule of the common law, whatever is annexed to the freehold becomes, in legal contemplation, a part of it, and is thereafter subject to the same incidents and conditions as the soil itself. But the diversity of trade and the development of manufactures required that the strict rules of the common law be measurably relaxed, and it may now be said that the nature of the articles and the manner in which they are affixed, and the intention of the party making the annexation, together with the policy of the law, are controlling factors in determining whether an

article, which may or may not be a fixture, becomes part of the realty by being annexed to the freehold. The purpose or intention of the parties, the effect and mode of annexation, and the public policy in relation thereto, are all to be considered.

When the parties immediately concerned, by an agreement between themselves, manifest their purpose that the property, although it is to be annexed to the soil, shall retain its character as personalty, then, except as against persons who occupy the relation of innocent purchasers without notice, the intention of the parties will prevail, unless the property be of such a nature that it necessarily becomes incorporated into, and a part of, the realty by the act and manner of annexation. *Taylor* v. *Watkins*, 62 Ind. 511 ; *Yater* v. *Mullen*, 24 Ind. 277.

Thus, if, in the course of constructing a house, brick should be placed in the walls, and joists and beams in their proper places, the brickmaker and sawyer would not be permitted to despoil the house by asserting an agreement with the owner that the brick and beams were to retain their character as personalty notwithstanding their annexation. In such a case the mental attitude of the parties can not modify the legal effect resulting from the annexation. *Campbell* v. *Roddy* (N. J.), 14 Atl. Rep. 279 ; *Henkle* v. *Dillon*, 17 Pac. Rep. 148 ; Jones Chat. Mortg., section 125.

But when chattels are of such a character as to retain their identity and distinctive characteristics after annexation, and do not thereby become an essential part of the building, so that the removal of the chattels will not materially injure the building, nor destroy or unnecessarily impair the value of the chattels, a mutual agreement in respect to the manner in which the chattels shall be regarded after annexation will have the effect to preserve the personal character of the property between the parties to the agreement. *Rogers* v. *Cox*, 96 Ind. 157 ; *Price* v. *Malott*, 85 Ind. 266 ; *Hendy* v. *Dinkerhoff*, 57 Cal. 3 ; *Haven* v. *Emery*, 33 N. H. 66 ; Ewell Fixtures, 66 ; *Malott* v. *Price*, 109 Ind. 22.

Accordingly, the proposition is well sustained that one who purchases machinery with a view that it shall be annexed to, or placed in, a building of which he is the owner, and who executes a chattel mortgage on the property so purchased, thereby evinces his intention that the property shall retain its character as personalty, regardless of the manner in which it may be annexed to the freehold. *Eaves* v. *Estes*, 10 Kan. 314; *Ford* v. *Cobb*, 20 N. Y. 344; *Sisson* v. *Hibbard*, 75 N. Y. 542; *Tifft* v. *Horton*, 53 N. Y. 377; *Campbell* v. *Roddy*, *supra*; *Henkle* v. *Dillon*, *supra*.

Except where the rights of innocent purchasers are involved, it is the policy of the law to uphold such contracts in the interest of trade.

The execution of a chattel mortgage by the owner of land, upon machinery which he afterwards places in a building thereon, is regarded as an unequivocal declaration of his intention that the act of annexation shall not change or take away the character of the machinery as personalty, until the debt secured by the mortgage has been fully paid. *Tifft* v. *Horton*, *supra*.

A provision in a chattel mortgage that, upon default of payment of the mortgage debt, the mortgagee may take possession of the mortgaged chattels and sell the same, if anything beyond the mortgage itself was needed, is equivalent to an express agreement that the property shall continue to be regarded as personalty.

Having reached the conclusion that, when the nature of the property admits of it, parties may by convention fix its character as personalty as between themselves, after it is annexed to the freehold, and that a chattel mortgage, such as the one under consideration, is equivalent to an express agreement in that respect, the case would be of easy solution but for the intervention of the rights of others than the immediate parties to the chattel mortgage.

It remains to be considered whether the chattel mortgage from Kemper to Hadley, Wright & Co. was effectual to pre-

serve the character of the mortgaged chattels as against the purchase-money mortgage given by Kemper to Eckart Bros., and the subsequent mortgage to the bank. What are the rights of a mortgagee of chattels of the description of those in question, who consents that the mortgaged property may be taken out of the county in which his mortgage is recorded, and that it may be annexed to real estate in such a manner as that, in the absence of an agreement or intention to the contrary, the act of annexation, *ipso facto*, makes the property accessory to the freehold?

In some jurisdictions, as will appear from the authorities already cited, the rule seems to be that an agreement between the owner of land and the vendor of chattels, which are to be annexed thereto, concerning the character of the chattels, is valid, not only between the parties, and against a prior mortgagee of the land, but also against a subsequent mortgagee or purchaser without notice, while in others an essentially different effect is attributed to such an agreement. Thus, in *Tifft* v. *Horton, supra,* and *Ford* v. *Cobb, supra,* it was held by the Court of Appeals, in the State of New York, that neither a precedent nor subsequent mortgagee of real estate could defeat the claim of one holding a chattel mortgage upon property which had been annexed to the mortgaged premises under an agreement that it should continue to be regarded as personalty.

These cases hold that the agreement between the holder of the chattel mortgage and the owner of the land, that the chattels shall retain their character as personalty, rebuts the presumption that they were intended as permanent accessories to the land, and binds both prior and subsequent mortgagees.

In *Pierce* v. *George*, 108 Mass. 78, a chattel mortgage was taken upon certain machinery in contemplation that the machinery was to be fastened to a building and annexed to real property owned by the mortgagee, and it was held that a subsequent mortgagee of the real estate could hold the chat-

tels as a part of the land. So it was held by the same court, in *Hunt* v. *Bay State Iron Co.*, 97 Mass. 279, that an agreement between the owner of iron rails and a railroad company, that the rails should retain their character as chattels after they had been fastened to the road-bed, would be unavailing as against a previous mortgagee of the road or a purchaser without notice. See, also, *Stillman* v. *Flenniken*, 58 Iowa, 450.

There is, therefore, no general rule which declares that machinery, upon which there is a chattel mortgage, becomes necessarily subject to an existing mortgage upon real estate to which it may afterwards be annexed with the consent of the mortgagee, to the exclusion or postponement of the prior chattel mortgage.

A prior mortgagee can not occupy the attitude of an innocent purchaser. The interests and rights of the holder of a chattel mortgage upon property which is annexed to real estate upon which there is an existing mortgage, must be determined by the practical application of equitable principles to the rights of the respective parties.

Whether the chattel mortgage shall be postponed, notwithstanding the agreement between the owner of the land and the mortgagee, must depend upon the inquiry whether or not the preservation of the rights of the holder of the chattel mortgage will impair or diminish the security of the real estate mortgagee as it was when he took it. If it will not, then it would be inequitable that the latter should defeat or destroy the security of the former. If it will, then it was the folly or misfortune of the holder of the chattel mortgage that he permitted the property to be annexed to a freehold from which it can not be removed without diminishing or impairing an existing mortgage thereon. As was said by the Court of Errors and Appeals of New Jersey, in *Campbell* v. *Roddy, supra*, "Where the articles are of such a character that their detachment would involve a destruction of or a dismantling of an important feature of the realty, such an-

· nexation might well be regarded as an abandonment of the lien by him who impliedly assented to the annexation."

Unless the detachment of mortgaged chattels would materially affect the security of the real estate mortgagee, by depreciating the value of the mortgaged property, or by dismantling it of an important feature existing at the time the mortgage was taken, the precedent real estate mortgage only attaches to the actual interest which the mortgagor has in the personal chattels subsequently annexed at the time of their annexation. *Campbell* v. *Roddy, supra; United States* v. *New Orleans Railroad,* 12 Wall. 362; *Fosdick* v. *Schall,* 99 U. S. 235.

Or if, as in *Bass Foundry, etc.,* v. *Gallentine,* 99 Ind. 525, the introduction of the new machinery involved the dismantling of a mill upon which a prior mortgage existed, so as to impair the security thus afforded, a claim upon the machinery so introduced would not prevail over the prior real estate mortgage.

In the present case it appears that the removal of the engine and boiler and other machinery would not injure or impair the value of the real estate or the building thereon. There can be no reason, therefore, so far as the Eckart Brothers are concerned, why a court of equity should practically destroy the security of the appellant, so long as the preservation of his rights are not prejudicial to those of the Eckart Brothers. As is in effect said in the well considered case already quoted from, if the detachment of the articles so annexed would occasion no damage to the realty, then the lien upon them can be enforced by a court of equity in the same degree as if they had remained chattels according to the agreement. If the detachment would occasion some diminution in the value, as it would have stood had the attachment not been made, then the depreciation must be made whole, and the rights of the parties adjusted by the chancellor according to the equity of the case.

The distinction between chattels whose completeness and

identity as separate and distinct articles may be preserved, notwithstanding their annexation, and those which necessarily become absorbed or merged in the realty by being annexed, must be kept in view. *Porter* v. *Pittsburgh Steel Co.*, 122 U. S. 267 (283); *Dunham* v. *Railway Co.*, 1 Wall. 254; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459.

This disposes of the case so far as it relates to the precedent mortgagees. As to the holder of a chattel mortgage who consents to have the mortgaged chattels placed in such an attitude in relation to real estate as that subsequent innocent purchasers and mortgagees are liable to be misled by the owner of the land to which they are annexed, there seems to be no equitable ground upon which his title should be enforced as against such purchasers or mortgagees.

The peculiar character of the subsequent mortgage executed to the bank in the present case, renders it unnecessary, however, that we should enlarge upon this feature of the subject. Recurring to the statement of the case, it will be seen that, after describing the real estate upon which the factory and machinery were situate, the engine, boiler, and other machinery are particularly and specifically enumerated as being also and in effect separately mortgaged. Coupled with this was the further stipulation that the mortgagor should not remove any of the machinery enumerated from the land on which it was then situate, until the mortgage debt was fully paid.

This feature of the mortgage was entirely unnecessary and meaningless, except upon the theory that the parties recognized and treated the engine and boiler and other enumerated articles as something distinct from the realty, in short, as personal property. This being so, the rule, which requires that effect shall be given to every part of a contract according to the manifest intention of the parties as expressed by the language employed, also requires us to hold that the intention of the parties to what is known as the bank mortgage, was to regard the machinery as personal

property, and to include it in the mortgage as such. They took their mortgage, therefore, subject to the prior chattel mortgage of the appellant on the personal property. It is suggested that this mortgage is not in the record, because in copying the bill of exceptions containing the evidence into the transcript, after stating that the mortgage had been read in evidence, instead of copying the mortgage, reference is made to a previous page of the transcript where the mortgage read in evidence is copied as an exhibit filed with the answer of the bank. This was sufficient. It was not necessary to copy it again, although it was presumably copied in the bill of exceptions as filed. When a paper is once copied into the transcript, it is not necessary to copy it again when introduced into subsequent parts of the record, provided it be so referred to as that it can be identified with certainty. *Voorhees* v. *Hushaw*, 30 Ind. 488.

Some suggestions are made in the briefs respecting alleged infirmities in the assignment of errors, and in respect to a defect of parties. The length of the opinion forbids that we should notice these suggestions further than to say they do not involve any error, nor do they relate to the merits of the case. No objection pertaining to the alleged defect of parties seems to have been made in the court below.

The conclusions thus reached result in a reversal of the judgment. The judgment is accordingly reversed, with costs, with directions to the court below to sustain the appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Filed Jan. 30, 1889.