Bromich v. Burkholder.

---

No. 20,016.

JOSEPH BROMICH, doing business as The Topeka Steam Boiler Works, *Appellee*, v. J. R. BURKHOLDER, *Appellant*, et al.

SYLLABUS BY THE COURT.

1. FIXTURES—*Machinery—When Part of Realty — Intention of Parties.* The intention of the parties is one of the strongest elements in determining whether machinery in a building has become part of the realty.

2. SAME—*Machinery—Conditional Sale—Notice to Prior Mortgagee of the Real Estate.* Notice to a prior mortgagee of real estate of a conditional sale agreement by which the vendor reserves title of chattels annexed to the real estate is not essential to preserve the rights of the vendor of the chattels.

3. SAME—*Machinery—Conditional Sale—When Part of Realty—Replevin.* In an action in replevin to recover possession of a tubular boiler which had been sold by plaintiff and installed in a mill upon which the defendant held a prior real-estate mortgage, the contract between the plaintiff and the owner of the realty reserving title in plaintiff until full payment of the purchase price, it is held, following *Eaves v. Estes,*

· 10 Kan. 314, 15 Am. Rep. 345, that the boiler, regardless of the nature of its attachment to the mill, never became a part of the realty, and, it appearing from the evidence that it might be removed from the property without defeating or impairing the security of the defendant, the plaintiff is entitled to recover its possession.

4. SAME — *Machinery — Conditional Sale — Rights of Prior Mortgagee.* Machinery sold under a conditional agreement by which the title is reserved in the vendor until full payment of the purchase price retains its character of personalty against the holder of a prior real-estate mortgage notwithstanding it replaces machinery which was there when the real-estate mortgage was executed and which was removed to make room for the machinery in question.

Appeal from Marion district court; ROSWELL L. KING, judge. Opinion filed June 10, 1916. Affirmed.

*S. Burkholder,* of Marion, for the appellant.

*Z. T. Hazen, Ralph H. Gaw,* both of Topeka, and *Braden C. Johnston,* of Marion, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an action in replevin to recover possession of a tubular boiler which had been sold by plaintiff to the Klassen Milling Company under a contract reserving title in plaintiff until full payment of the purchase price. At the time the action was brought the boiler was in the possession of defendant who has acquired title to the real estate under mortgages in existence at the time the boiler was installed. The defendant contends that the property in question by reason of being attached and firmly fixed to the real estate has become a part thereof and can not be recovered by replevin. The case was tried without a jury and the court found generally in plaintiff's favor and rendered judgment accordingly, from which the defendant appeals.

Long prior to the sale and installation of the boiler, the defendant, J. R. Burkholder, who resided in Canada, held mortgages on the real estate amounting to $7000, and in 1912 he brought suit to foreclose them and obtained judgment. At the sheriff's sale under his judgment he purchased the real estate. He had no actual notice of the contract under which the machinery was placed in the mill, but the contract was filed for record December 4, 1911, some months after the boiler was installed.

In May, 1911, the boiler was delivered and installed in a frame building which stood about ten feet from the mill building. Another boiler in good condition but too small for the mill was removed to make room for this one. The front part of the boiler weighed 4400 pounds, and the tubular portion weighed nine tons. It was eighteen feet long and six feet wide. A solid brick wall laid in cement was built about it, and four pipes connected it with the mill. The smokestack stood on a brick pier outside the boiler house, and it would not have been necessary to destroy the smokestack in order to remove the boiler. Witnesses for the plaintiff testified that the removal of the boiler would not injure the property to which it was attached; and they varied from $35 to $150 in their estimates of the cost of removing it. The plaintiff was not a party to the foreclosure proceedings, but knew at the time the sale of the boiler was made that it was to be attached to the real estate and used to furnish power to the mill.

In modern times there has been a great relaxation of the ancient rule that all things annexed to the realty become part of it. Formerly the criterion for determining whether machinery in a building had become part of the realty was whether it was physically attached or in the ordinary understanding became a part of the realty. The weight of authority now is that the intention of the parties is the safest criterion. As said in the opinion in *Shoemaker v. Simpson*, 16 Kan. 43:

"Even dwelling houses, or indeed anything placed by men upon the soil, if they can be again removed, either in bulk or in pieces, may under some circumstances be only chattels, although they may be ever so firmly attached to the soil. The intention of the parties is one of the strongest elements in determining questions of this kind." (p. 50.)

The exact question involved in this case was decided in *Eaves v. Estes*, 10 Kan. 314, 15 Am. Rep. 345. That was a controversy between the holder of a chattel mortgage covering a steam engine which had been installed in a mill upon which Eaves held a prior real-estate mortgage. It was held that by reason of the terms of the chattel mortgage, the engine, regardless of the nature of its attachment to the mill, never became a part of the realty, and that the vendors were entitled to recover its possession and remove it from the mill.

In the opinion it was said:

"As a general rule, improvements on real property inure to the mortgagee as part of his security; but whether any given piece of property becomes so attached to the freehold as to make it a part thereof is frequently a question of great difficulty. . . . The engine when built, and at the shop of builders, was unquestionably personal property. Under the light of adjudicated cases, and having no regard to the terms of the chattel mortgage, it may well be doubted whether it ever became a part of the realty as between vendor and vendee. . . . But when we consider the purpose of the parties, as evinced by the mortgage, to make the engine retain the character of a chattel, regardless of the manner of its attachment to the mill, and as the mortgage violated no principle of law, wrought no injury to the rights of any, and was in the interest of trade, we have no doubt that the engine continued to be personal property. . . . It is not intended to decide that parties can by any arrangement make property either real or personal as they may choose." (pp. 316, 317.)

The opinion then quotes (p. 317) from the leading case, *Ford v. Cobb,* 20 N. Y. 344:

"It will readily be conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and can not in general be changed by the convention of the parties. Thus, it would not be competent for parties to create a personal chattel interest in a part of the separate bricks, beams, or materials of which the walls of a house were composed." (p. 348.)

In section 133*a* of the fifth edition of Jones on Chattel Mortgages, it is said:

"One already holding a mortgage of the realty has no equitable claim to chattels subsequently annexed to it. He has parted with nothing on the faith of such chattels. Therefore, the title of a conditional vendor of such chattels, or of a mortgagee of them before or at the time they were attached to the realty, is just as good against the mortgagee of the realty as it is against the mortgagor."

The point is made by defendant that *Eaves v. Estes,* 10 Kan. 314, 15 Am. Rep. 345, is not controlling because the opinion in that case states that the prior mortgagee had actual and constructive notice of the contract under which the chattel was annexed to the realty. The decision, however, was not made to turn in any respect upon the question of notice, and besides the great weight of authority supports the doctrine that notice to the mortgagee of the real estate of the annexation of chattels covered by a chattel mortgage or a conditional sale agreement is not essential to preserving the rights of the vendor of the chattels. (*Cox v. Lighting Company,* 151 N. Car. 62, 65 S. E.

648, 134 Am. St. Rep. 966, 18 Ann. Cas. 936.)    The opinion in that case states:

"In no one of the many cases examined by us has notice to the prior mortgagee of the realty of the annexation of chattels covered by a chattel mortgage or conditional sale been considered as determinative of his superior right or as important in fixing the rights of the respective mortgagees." (p. 67.)

The opinion (p. 68) cites and approves *Eaves v. Estes, supra.* In the North Carolina case the prior real estate mortgage contained an express provision that it should cover future additions and improvements made upon the property.    Other cases sustaining the rights of the conditional vendor as against a purchaser on foreclosure of a prior mortgage are *Tifft et al. v. Horton et al.,* 53 N. Y. 377, 13 Am. Rep. 537, and *Campbell v. Roddy,* 44 N. J. Eq. 244, 6 Am. St. Rep. 889.

The foregoing cases also hold that the execution of a chattel mortgage by the owner of the realty upon machinery which he afterwards places in a building thereon is an unequivocal declaration of an intention that the machinery shall be regarded as personalty.    In *Page v. Edwards,* 64 Vt. 124, 23 Atl. 917, it was held that machinery sold in this way will retain its character of personalty against the holder of an existing mortgage on the land, notwithstanding it is used to replace other machinery which was there when the real-estate mortgage was executed, and which was removed to make room for the machinery in question.    To the same effect, see *Hill v. Sewald,* 53 Pa. St. 271, 91 Am. Dec. 209.

An elaborate discussion of the question will be found in a Note, 37 L. R. A., n. s., 119, which includes only those cases falling strictly within its scope, that is, the rights of the selling party retaining title thereto or a lien thereon as against existing mortgagees of the realty to which it is affixed by the owner.    The author of the note states that the weight of authority is to the effect that where the removal of the fixture will not materially injure the premises, a vendor of the fixture retaining title may assert his rights thereto as against a prior mortgagee of the realty.

What is termed the equitable rule adopted by many of the courts is stated in the following language:

"Whether the chattel mortgage shall be postponed, notwithstanding the agreement between the owner of the land and the mortgagee, must de-

pend upon the inquiry whether or not the preservation of the rights of the holder of the chattel mortgage will impair or diminish the security of the real estate mortgagee as it was when he took it. If it will not, then it would be inequitable that the latter should defeat or destroy the security of the former. If it will, then it was the folly or misfortune of the holder of the chattel mortgage that he permitted the property to be annexed to a freehold from which it can not be removed without diminishing or impairing an existing mortgage thereon." (*Binkley v. Forkner et al.,* 117 Ind. 176, 184, 19 N. E. 753, 3 L. R. A. 33, 36.)

The evidence of the plaintiff in the present case tended to show that the boiler in question can be removed without substantial injury to the real estate. There are no special findings, but the general finding in plaintiff's favor must be held to include a finding that plaintiff's rights may be preserved without defeating or impairing the security of the defendant. So, if we should follow the equitable rule just referred to, the judgment must be affirmed. The essential facts, however, are not different from those in the well-considered case of *Eaves v. Estes,* 10 Kan. 314, 15 Am Rep. 345. We are satisfied with the reasoning upon which Chief Justice Kingman supported the conclusion reached by the court in that case, which has continued as the law in this state since 1872.

The judgment is affirmed.