No. 28,813.

GEORGE H. SMITH, as Trustee, etc., et al., *Appellants*, v. THE HOLLAND FURNACE COMPANY, *Appellee*.

(278 Pac. 719.)

Opinion filed July 6, 1929.

*Justus N. Baird* and *Paul H. Ditzen*, both of Kansas City, for the appellants.
*James P. Fox*, of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the value of a furnace which defendant had removed from plaintiffs' house on the assumption that it had the right to do so because of the terms of a contract under which the furnace had been installed.

The facts developed by the pleadings and by an agreed statement of facts were to this effect:

Plaintiffs owned a house in Kansas City. On February 1, 1927, they made a contract for its sale to one Lumsden and his wife. The contract provided that the Lumsdens should pay $150 in cash for an option to purchase, which option might be renewed from month to month by the payment of $25 per month until a total sum of $3,650 should be paid, whereupon the house should become the property of the Lumsdens. The contract also provided that the Lumsdens might take possession, but that any improvements which they made on the house should become the property of the owners. Other details of the contract, which was quite elaborate, may be of no present concern.

The Lumsdens entered into possession and shortly thereafter made a contract with the defendant, the Holland Furnace Company, to install a furnace in the house. By its terms the Lumsdens were to pay $13 in cash and a like sum each month until the full price of the furnace, $280, was paid, and title to the furnace and the right to remove it on default of the monthly installments were reserved to the furnace company. The furnace was accordingly installed in the spring of 1927. To do so defendant had to cut the floors for the hot-air registers. In the earthen basement defendant laid a cement foundation for the furnace and attached the requisite pipes, flues, shafts, etc.

In a few months the Lumsdens threw up their option contract to purchase the house and vacated the premises. They also made default in their payments on the furnace, and defendant's workmen removed the furnace and such appendages thereto as could be gotten out without substantial damage to the house, but they left the fittings which were attached to the floor and walls of the house. The agreed statement of facts recites:

"That on or about the 11th day of October, 1927, said defendant, without the consent or knowledge of said plaintiffs, entered in and upon said premises and loosened said furnace from said cement base, dismantled and took said

furnace and pipes in said basement from said building; that the registers, boxing, hot- and cold-air pipes attached to the floor and walls of said building were installed by defendant at an expense of $108.99, for which defendant makes no claim herein, and which were not removed from said building by said defendant; that the reasonable value of said furnace was $200; that the reasonable cost of reinstalling a furnace in said house is $50."

Plaintiffs' petition contained no allegation of damages. It merely prayed for judgment for $200 as the reasonable value of the furnace removed and for $50 as the reasonable cost of reinstalling such a furnace. The trial court made a general finding in favor of defendant and judgment was entered accordingly.

Plaintiffs appeal, contending that because no previous agreement had been made with them relating to the installing of the furnace, it became part of the realty, and that its removal by defendant was a wrongful trespass for which it was liable in damages.

The rule thus contended for was the prevailing one at common law and some eminent courts still adhere to it. (*Des Moines Impr. Co. v. Holland Furnace Co.*, 204 Ia. 274, 212 N. W. 551; *Tippet & Wood v. Barham*, 180 Fed. 76, 37 L. R. A., n. s., 119 and note.) The case of *Flocke v. Troske*, [N. D.] 222 N. W. 262, also adheres to the old rule, but it also rests its decision on two other unassailable grounds— a local statute, and the specific terms of the contract under which the fixtures, a Delco light plant and a hay carrier, were annexed to the house and barn.

Looking into other decisions, however, we find that many courts do not admit that the fact of annexation of a chattel to realty is conclusive that its character as personal property is extinguished, but hold that the intention of the parties to the annexation and the attendant circumstances may be of controlling significance. (*Holland Furnace Co. v. Jefferson*, 173 Minn. 121, 216 N. W. 795; *Ratchford v. Cayuga Co. Cold Storage & W. Co.*, 217 N. Y. 565, L. R. A. 1916E 615; and see, also, Ann. Conditional Sale, Fixtures, 13 A. L. R. 448.)

However, it is really unnecessary to make an extended examination of the decisions in other jurisdictions, for the principle which controls the case before us is settled by our own precedents. In the early case of *Eaves v. Estes*, 10 Kan. 314, 317, 318, this court quoted approvingly from the still earlier case of *Ford v. Cobb*, 20 N. Y. 348, thus:

"It will readily be conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and cannot in general

be changed by the convention of the parties. Thus it would not be competent for parties to create a personal chattel interest in a part of the separate bricks, beams or materials of which the walls of a house are composed. . . . But it is otherwise with things which, being originally personal in their nature, are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction of, or material injury to, the things real with which they are connected, though their connection with the land or other real estate is such that in the absence of an agreement, or of any special relation between the parties in interest, they would be part of the real estate." (p. 317.)

The syllabus of this 57-year-old decision of our own court reads:

"Where E. & Co. built a steam engine for the mill of K., and while it was still at their shop took a chattel mortgage on it, with a stipulation of their right to take possession of the same, whether it was affixed to the freehold or not: *Held*, that where the facts leave the court in doubt as to whether the engine had by its attachment to the realty become a fixture, the intention of the parties, as evinced by the chattel mortgage, might be looked to as controlling in the determination of the character of the property, and that the court below properly held that it remained personal property and subject to the chattel mortgage."

In *Marshall v. Bacheldor*, 47 Kan. 442, 28 Pac. 168, one Hollis, an implement dealer, sold a windmill and feed grinder to Bacheldor, a farmer. These chattels and incidental equipment were set up on Bacheldor's homestead farm upon an agreement that they would remain the property of Hollis until paid for and that he might retake possession at any time he deemed himself insecure. Bacheldor did not pay. Hollis brought suit and recovered judgment and sought to subject Bacheldor's homestead to execution to satisfy the judgment. It was recognized by court and counsel that if the windmill and grinder had become improvements annexed to the realty in contemplation of law, the homestead character of the farm would not exempt it from execution to satisfy the judgment. (Const. art. 15, § 9; *Hurd v. Hixon & Co.*, 27 Kan. 722.) But it was held that the contract under which the windmill and grinder were sold and erected on the farm—to remain the property of Hollis until paid for and he to have the right to remove them if he felt insecure—was valid, and consequently they did not become part of the real estate, and Bacheldor's homestead could not be subjected to execution levy and forced sale to pay for the windmill and grinder as improvements to the realty.

The rule announced in *Eaves v. Estes*, supra, was reiterated in *Bromich v. Burkholder*, 98 Kan. 261, 158 Pac. 63, and neither of

these can be distinguished in principle from the case now under review. In both these cases the reserved title of the vendor of the chattel was upheld against the claims of a prior mortgagee and the purchaser at the mortgage foreclosure sale. And the situation of these plaintiffs is no stronger in law or equity than that of a prior mortgagee.

Plaintiffs do not allege that the removal of the furnace damaged the house. They merely ask for the value of the furnace and the cost of reinstalling another. Defendant actually enhanced the value of the house by fitting it with air shafting and floor registers which it was impracticable to remove without possible damages to the house, and so these parts of the completed heating plant, worth $108.99, were not removed by the furnace company.

The judgment of the district court is affirmed.