In re CREW'S CHRYSLER–PLYMOUTH, INC., Debtor.

BROCKMAN EQUIPMENT LEASING, INC., Plaintiff,

v.

Hosea E. SOWELL, Trustee, Defendant,

and

Roger and Sherry Jones, Intervenors.

Bankruptcy No. 79–20993.
Adv. No. 80–0028.

United States Bankruptcy Court,
D. Kansas.

July 2, 1980.

Charles R. Wilson, Prairie Village, Kan., for plaintiff, Brockman Equipment Leasing, Inc.

Thomas M. Mullinix, Kansas City, Kan., for defendant, Hosea E. Sowell, trustee.

Mark Corder, Olathe, Kan., for defendants, Roger and Sherry Jones, intervenors.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

On April 30, 1980, the above entitled cause came on for hearing before the Court. The plaintiff, Brockman Equipment Leasing, Inc., was represented by Charles R. Wilson. The defendant, Hosea E. Sowell, trustee, was represented by Thomas M. Mullinix; and defendants, Roger and Sherry Jones, intervenors, were represented by Mark Corder.

The Court, after hearing testimony of witnesses, statements of counsel and examining the files, pleadings, exhibits and briefs filed herein, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On July 1, 1978, Dorothy M. Williams leased the following real property to Roger A. Jones and Sherry Jones, for a period of ten years:

"Lots 112–126, both inclusive, Block 4, Lockwood Heights, an addition to the City of Olathe, Kansas, commonly known as 130 Fir Street, Olathe, Kansas."

2. On July 6, 1978, the above described premises were subleased to Crews Chrysler-Plymouth, Inc., A. Drummond Crews, president, with the consent of Dorothy M. Williams, for use as an automobile dealership.

3. On August 2, 1978, Roger A. Jones, intervenor, was notified by the attorneys for Crews Chrysler-Plymouth, Inc., of the fact that 15 light poles were to be installed on the parking lot at a total cost of $19,-000.00; that $6,000.00 was to be paid in cash and the balance was to be paid pursuant to a lease-purchase agreement.

4. On September 21, 1978, Crews Chrysler-Plymouth, Inc. entered into the lease-purchase agreement with Brockman Equipment Leasing, Inc., wherein by the terms of the lease, the lessee was given the option to *"purchase said equipment per schedule for the sum of One Dollar and no/00 ($1.00) plus applicable state sales tax, at any time between the sixth day of September, 1983 to the twentieth day of September, 1983."*

5. That the equipment involved in the lease-purchase agreement were pylons and lights which were delivered to Crews Chrysler-Plymouth, Inc. by Brockman and the same were thereafter installed on the property by Crews Chrysler-Plymouth, Inc., who constructed concrete pedestals in the parking lot and attached the light poles delivered by Brockman Equipment thereto by four bolts at the base of the poles.

6. The length of this lease was 60 months, payable in installments of $366.39 per month.

7. On September 26, 1978, the financing statement was filed with the Secretary of State of Kansas and on September 27, 1978, said financing statement was also filed with the Register of Deeds of Johnson County, Kansas.

8. On December 28, 1979, an involuntary petition in bankruptcy was filed against Crews Chrysler-Plymouth, Inc., and on January 24, 1980, the Court entered its Order for Relief. Thereafter, Hosea E. Sowell was appointed interim trustee. The trustee failed to assume the lease within the time allowed by the Code (11 U.S.C.A. § 365) and thus, said lease was terminated as to him.

9. On April 3, 1980, Roger A. Jones and Sherry Jones subleased the premises at 130 N. Fir Street, Olathe, Kansas, to Olathe AMC-Jeep-Renault, Inc. (James V. Hundley, president) for a period of five years.

10. On February 25, 1980, Brockman Equipment Leasing filed a Complaint for Relief from Stay under 11 U.S.C.A. § 362(d)(2)(A) alleging that the defendant-trustee had no equity in the light poles and therefore, any rights he had therein should be terminated.

11. After a Motion to Intervene by Roger and Sherry Jones, filed on March 12, 1980, the Court granted them leave to intervene on April 30, 1980.

## ISSUE INVOLVED

WHETHER OR NOT THE LIGHT POLES HEREIN REMAIN PERSONALTY · AND THEREBY MAY BE REMOVED BY BROCKMAN EQUIPMENT LEASING, INC.

## CONCLUSIONS OF LAW

■ K.S.A. 84–9–313(1)(a) states in pertinent part as follows:

"*(a) goods are 'fixtures' when affixing them to real estate so associates them with the real estate that, in the absence of any agreement or understanding with his vendor as to the goods, a purchaser of the real estate with knowledge of interests of others of record, or in possession, would reasonably consider the goods to have been purchased as part of the real estate;*"

With regard to K.S.A. 84–9–313(1)(a), the Joneses could not have reasonably considered the poles to have been purchased as a part of the real estate since they were aware that the poles were installed as a result of a lease with an option to buy.

*Bromich v. Burkholder,* 98 Kan. 261, 158 P. 63 (1916) held that affixed machinery, sold on a conditional sales agreement in which the title is reserved in the vendor until full payment, retains its character as personalty against the holder of a prior real estate mortgage.

■ Also in *Bromich v. Burkholder,* supra, at pg. 263, 158 P. at pg. 64, the Court stated:

"*In modern times there has been a great relaxation of the ancient rule that all things annexed to the realty become part of it. Formerly the criterion for determining whether machinery in a building had become part of the realty was whether it was physically attached or in the ordinary understanding became a part of the realty. The weight of authority now is that the intention of the parties is the safest criterion. As said in the opinion of Shoemaker v. Simpson, 16 Kan. 43:*

\*   \*   \*   \*   \*   \*

*The exact question involved in this case was decided in Eaves v. Estes, 10 Kan. 314, 15 Am.Rep. 345. That was a controversy between the holder of a chattel mortgage covering a steam engine which had been installed in a mill upon which Eaves held a prior real-estate mortgage. It was held that by reason of the terms of the chattel mortgage, the engine, regardless of the nature of its attachment to the mill, never became a part of the realty, and that the vendors were entitled to recover its possession and remove it from the mill.*"

In this case, it was the intention of the original parties that the light poles remain personalty and this Court so holds that they are personalty and may be removed by plaintiff, Brockman.

In *Smith v. Holland Furnace Co.,* 128 Kan. 580, 583, 278 P. 719, 720 (1929), the Court stated in referring to *Marshall v. Bacheldor,* 47 Kan. 442, 28 P. 168:

"*But it was held that the contract under which the windmill and grinder were sold and erected on the farm—to remain the property of Hollis until paid for and he to have the right to remove them if he felt insecure—was valid, and consequently they did not become part of the real estate, and Bacheldor's homestead could not be subjected to execution levy and forced sale to pay for the windmill and grinder as improvements to the realty.*"

In *Finnegan v. Ihinger,* 150 Kan. 357, 364, 92 P.2d 538, 543 (1939), when referring to a chattel mortgage which provided that a building on land constituting personalty, the Court stated, in pertinent part:

"*That the parties to the transaction had the right to agree the building should remain personalty and that their rights should be determined accordingly is no longer open to dispute under the numerous decisions of this court. (Eaves v. Estes, 10 Kan. 314 [15 Am.Rep. 345;] [Central] Branch [R.] Co. v. Fritz, 20 Kan. 430, 434, 436; Comm'rs of Rush County v. Stubbs, 25 Kan. 322; Docking v. Frazell, 38 Kan. 420, 17 P. 160; Bromich v. Burkholder, 98 Kan. 261, 265, 158 P. 63; Lum-*

ber and Grain Co. v. Eaves, 114 Kan. 576, 580, 220 P. 512; McCrae v. Bradley Oil Co., 148 Kan. 911, 913, 84 P.2d 866."

In this case, the parties to the transaction (Crews Chrysler-Plymouth, Inc. and Brockman Equipment Co.) entered into an agreement whereby the poles were to be leased with an Option to Purchase in 1983, which in effect showed their intention that the poles were to remain personalty until the option was accepted.

The Court finds that the rights of the intervenors cannot be any greater than those of Crews Chrysler-Plymouth, Inc., or Dorothy M. Williams, owner; that the light poles themselves were and are equipment; that the contract entered into between Crews Chrysler-Plymouth, Inc. specifically states that it is an "*Option to Purchase Leased Equipment*"; that the lease was to run until September 6, 1983, at which time the lessee, Crews Chrysler-Plymouth, Inc., would then have an option period to purchase this equipment for one dollar.

The Court further finds that the payments to be made on said light poles are in default and the time has not come in which the lessee could have exercised his option to purchase the poles; that in a letter from plaintiff, Brockman Equipment Leasing, Inc., to the intervenors, Roger and Sherry Jones, dated August 2, 1978, they were advised that the light poles were subject to a "*lease purchase agreement*"; these poles are attached to each of the fifteen concrete pedestals by four bolts.

The Court further finds that the intervenors' contentions are wholly without merit and cannot apply in this case, in that the poles were attached with their full knowledge; that it was a lease-purchase agreement, coupled with the fact that paragraph 14 of the original lease between Dorothy M. Williams and Roger and Sherry Jones, specifically excepts business "*trade fixtures*" and "*equipment*" therefrom. Paragraph 14 reads as follows:

"*14. FIXTURES: All buildings, repairs, alterations, additions, improvements, installations, equipment and fix-* tures, by whomsoever installed or erected (except such business trade fixtures and equipment (D.M.V.) belonging to LESSEE as can be removed without damage to or leaving incomplete the premises or building) shall belong to LESSOR and remain on and be surrendered with the premises as a part thereof, at the expiration of this lease or any extension thereof."

In other words, under paragraph 14, all building repairs, alterations, fixtures and equipment, etc. installed or erected on premises shall belong to the lessor except business trade fixtures and equipment belonging to the lessee that can be removed without damage to or leaving incomplete the premises or building.

In *Bromich v. Burkholder, supra*, at pg. 266, 158 P. at pg. 65, the Court stated: "*The evidence of the plaintiff in the present case tended to show that the boiler in question can be removed without substantial injury to the real estate.*"

The Court finds, in the instant case, that the evidence herein shows that the light poles are leased equipment and can be removed by unscrewing the four bolts in which they are attached to the concrete base and further their removal would in no way, substantially injure the real estate.

The Court further finds that it was the intention of the parties that these poles remain personalty until the lessee (Crews Chrysler-Plymouth, Inc.) completed its payments and exercised its right to take up the option to purchase: neither of which ever occurred. This ruling is in line with the weight of authority. *Shoemaker v. Simpson*, 16 Kan. 43, 50.

For reasons set out above, the Court grants judgment to the plaintiff, Brockman Equipment Leasing, Inc.; the automatic stay is therefore terminated; and the temporary restraining order is vacated.

THE FOREGOING CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.