ROBERT DOCKING v. J. A. D. FRAZELL.

1. BUILDING, *When Personal Property.* A building occupied for a hotel and moved by a tenant upon a vacant city lot, which is held under a lease for a term of years, in which it is provided that at its expiration the lot shall be surrendered in the same condition it was at the date of the lease, is personal property.

2. CHATTEL MORTGAGE — *Foreclosure — Title.* A chattel mortgage given upon such hotel building would be valid, and a foreclosure and sale thereunder would convey the property to the purchaser at such sale.

*Error from Clay District Court.*

THE opinion states the case. Judgment for the plaintiff, at the May Term, 1886. The defendant brings the case here.

*J. S. Walker,* for plaintiff in error.

*C. M. Anthony,* for defendant in error.

Opinion by HOLT, C.: This case has been in this court before, (*Docking v. Frazell,* 34 Kas. 29,) when it was decided upon the testimony brought here then, that the building in

question, used as a hotel, was presumed to be real estate. Upon the re-trial of the cause after reversal here, the same question was again presented to the district court, but the testimony offered to establish whether it was real estate or personal property was much more voluminous in this trial than in the former one, and many of the doubts expressed in the opinion of Mr. Justice VALENTINE were solved by the testimony presented.

The plaintiff in error, plaintiff below, complains of the judgment rendered against him for costs in his action for forcible entry and detainer, and claims that the court erred in several matters on the trial. We shall not notice his assignments of errors specifically, but will simply determine whether the findings of fact were sufficient to authorize the conclusions of law and the judgment. The statement of this case in 34 Kas. is referred to as a part of the statement in this opinion. Upon the retrial it was found by the court:

"1. On the 27th of April, 1880, H. A. Keeler being then the owner of lots one and two, in block forty-three, of the Clay Center town site, in Clay county, Kansas, executed, acknowledged and delivered to one A. S. Pierce, a lease of said lots for a term of five years, beginning May 1st, 1880, and ending May 1st, 1885; the premises were at that time vacant and unoccupied. In this lease it was agreed, among other things, that the lots should be occupied by buildings for business purposes, and that the buildings should be removed by the lessee at the end of the term; this lease was duly filed for record April 27th, 1880, and recorded among the real-estate records of Clay county. Immediately afterward, said Pierce placed upon lot one the building which was afterward known as the 'Eagle Hotel.' The building was moved on the lot from another lot in the same city. Afterward, on August 14th, 1880, A. S. Pierce executed, acknowledged and delivered to Frank Piquerez a written instrument embodying an assignment of said lease as to a part of lot one, forty feet by one hundred and forty feet in size, on which the Eagle House stood. In this instrument it was stipulated that at the end of the term of the lease from Keeler to Pierce, Piquerez should surrender the ground in the same condition it was in at the date of said lease. This instrument was, on the day

of its date, duly recorded in the office of the register of deeds. Piquerez thereupon took possession of the premises and occupied the house, either alone or with his family, until about November, 1882, when he abandoned his family, and left with the intention of going to California, and has never returned.

"2. On July 1, 1881, Frank Piquerez executed a chattel mortgage to Joseph Ruot on said house and the furniture therein, to secure the payment of certain notes described in the chattel mortgage, amounting to $2,000. This chattel mortgage was recorded in the office of the register of deeds of said county, July 27th, 1881. On the 26th of May or July, 1882, Frank Piquerez executed another chattel mortgage to Joseph Ruot, on the same property, to secure the payment of certain notes therein described, amounting to $1,800. This chattel mortgage was duly recorded in the office of the register of deeds of said county, July 27th, 1882. At the time said chattel mortgages were given, Joseph Ruot was, and has ever since been, a resident of Pennsylvania. He knew of the existence of said chattel mortgages, but did not know their contents. Piquerez was indebted to him about one hundred and forty dollars, with interest; but he never had any of the notes described in either of the chattel mortgages, and did not know that such notes were described in the mortgages until his deposition was taken in this action."

"4. On October 26th, 1882, Frank Piquerez became indebted to J. Christmas; on June 5th, 1883, an action was commenced in the district court of Clay county by Christmas against Piquerez, to recover the amount of said indebtedness; an attachment was issued in the action, and levied upon the house and lease and interest in the lot as the property of Frank Piquerez. Christmas obtained judgment in that action against Piquerez for his said debt and costs; an order of sale was issued, the property advertised for sale, and sold as real estate on November 8th, 1883, by the sheriff of Clay county, to the plaintiff, Robert Docking. The sale was confirmed by the court, and on January 19th, 1884, the sheriff's deed to Docking was duly executed, acknowledged. and recorded in the office of the register of deeds of said county."

These findings are supported by the evidence. The decision of whether this building, occupied as a hotel, was real or personal property, determines the rights of the parties to this action. The court, as a conclusion of law from the facts spe-

cially found, held it to be personal property. It is, and has been for several years, occupied as a residence and used as a hotel. From that alone the presumption would be that it is real estate. But it is further found that the lot upon which it is situated is owned by one person and the building by another. The owner of the building, to be sure, has a leasehold estate in the land, but in the lease under which he held it is expressly stipulated that at its expiration any buildings that might be erected upon the lot should be removed. The plaintiff does not pretend to claim through any interest derived from the owner of the land upon which the hotel is situated. It is no question between the landlord and the tenant. He claims by virtue of a sheriff's sale upon an execution issued against defendant's vendor. If the hotel is personal property, the title had passed to defendant under the chattel mortgage of Piquerez, and plaintiff obtained no interest in it by the sale of the sheriff.

We think it is personal property. There is no direct evidence tending to show in what manner the building was affixed to the freehold, unless it may be inferred that it was not very firmly and solidly attached, from the fact that it was moved upon the lot and was to be moved off when the lease expired. It is evident that the owner of the land, and those who had owned the building, treated it as personal property. One of the tests of whether a building is a fixture, is, did or did not the party placing the building upon the land intend to make it a permanent accession to the freehold? Perhaps this is as important as any criterion offered by the law. There can be no possible question in this action how the owners of the land, and those who had held under the lease, regarded this building: to them it was at all times personal property.

"The clear tendency of modern authority seems to be to give preëminence to the question of intention to make the article a permanent accession to the freehold, and other tests seem to derive their chief value as evidence of such intentions." (Ewell on Fixtures, 22; *McDonald v. Shepard*, 25 Kas. 112; *Eaves v. Estes*, 10 id. 314; *Hinkley v. Black*, 70 Me. 473; *Morris v. French*, 106 Mass. 326; *Yater v. Mullen*, 24 Ind. 277.)

If it was personal property, Piquerez had the right to mortgage it to his brother-in-law, Ruot, or to give it to him outright, so far as the plaintiff in this action is concerned. These mortgages were given a long time before the debt of Piquerez to plaintiff was contracted, and he, as a subsequent creditor, certainly has no claim to this property. There is no testimony that would justify even an inference that these mortgages were given for the purpose of defrauding his creditors; the inference, if any, would be the reverse, as he placed it on record as notice to all with whom he might deal, that the property was incumbered.

From the testimony brought here, we think the judgment of the court below was correct, and that it should be affirmed.

By the Court: It is so ordered.

All the Justices concurring.