No. 31,471

J. C. KUSKE, Administrator de bonis non with the Will Annexed of HENRY C. KUSKE, Deceased, *Appellant,* v. ANDREW J. STALEY, *Appellee.*

(28 P. 2d 728.)

Opinion filed January 27, 1934.

*J. R. Mayall, O. W. Helsel* and *P. D. Gardiner,* all of Wichita, for the appellant.

*Dempster O. Potts, R. G. Bennett* and *Dallas M. Potts,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: .This was an action to foreclose a mortgage on real estate. Defendant answered and filed a cross petition asking that his title be quieted. Judgment was for defendant. Plaintiff appeals.

The petition alleged the execution by defendant and his wife of the note and mortgage in question. It further alleged that plaintiff was the administrator of the estate of Henry C. Kuske, deceased, who had acquired the note and mortgage in question from Dean Gordon. It then alleged that the defendant was in default in his payments.

The defendant answered that he was in possession and held the legal title to the real estate in question. Defendant denied he had ever executed the note and mortgage in question, and, by way of

cross petition, alleged that it constituted a cloud on his title, and he asked that his title be quieted.

The plaintiff alleged in his answer to this cross petition that on September 1, 1919, defendant and his wife entered into a lease and contract to purchase the real estate in question from Gordon; that they made payments under the contract until January 1, 1926; that on that date Gordon conveyed the property in question to defendants by a warranty deed; that on the same date defendants executed a note and mortgage on the real estate for $400.88 (this amount represented the amount still due on the lease and option to purchase contract); that the deed was recorded in the office of the register of deeds and contained the following reservation: "Reservation of vendor's lien. Said Dean Gordon hereby reserves a lien on said real estate to secure the payment of a note of this date made by said Andrew J. Staley and his wife, for the sum of $400.88 given for part of said purchase money;" that at the time the note and mortgage sought to be foreclosed by the petition of plaintiff were executed there was due on the $400.88 note the sum of $385.33; and that the note which was sought to be foreclosed represented the balance due on the note for $400.88 and additional funds that were advanced by plaintiff to defendant, and that the note in question had not been paid. Plaintiff further answered that neither the mortgage in question nor the vendor's lien had been paid, and that by reason of the assignment pleaded he is possessed of all the rights of Dean Gordon in the premises and subrogated to all the rights of Gordon in and to the note and mortgage pleaded and to the vendor's lien. The plaintiff prayed that the defendant take nothing by his cross petition and that, in the event the note and mortgage sued on were found to be forgeries, he be subrogated to the rights of the prior mortgagee, Dean Gordon, and to the vendor's lien pleaded in the amount of $385.33, with interest, that the judgment be decreed to be a lien on the real estate in question, and that the sheriff be directed to sell the real estate and apply the proceeds as follows:

"First: To the payment of the costs of said sale and of this suit. Second: To the payment of the taxes due on said real estate at the time of said sale. Third: To the payment of the sums and interest found due the plaintiff. Fourth: The balance, if any, to be paid into court to abide the further order thereof."

The defendant replied and admitted the execution of the lease and

contract of sale; admitted that Gordon delivered the deed to him on January 1, 1926. He denied that the reservation pleaded was in the deed when delivered. He alleged he had complied with all the provisions of the contract to purchase and was entitled to a deed on January 1, 1926. He denied the execution of the $400.88 note and the mortage securing it.

With the issues thus framed the case came on for trial to a jury. It was stipulated that the jury should act in an advisory capacity and should not return a general verdict but should answer special questions submitted.

The jury answered the following special questions, which are of interest to us:

"1. Did Andrew J. Staley sign the note and coupons marked 'Exhibit 9,' and dated November 15, 1927? A. No.

"2. Did Andrew J. Staley sign the mortgage marked 'Exhibit 10,' and dated November 15, 1927? A. No.

"3. What sum remained due and unpaid, if any, on the lease and option to purchase contract marked 'Exhibit 12,' dated September 1, 1919, on November 15, 1927? A. None.

"4. Did the deed, marked 'Exhibit 13,' contain the clause reserving a vendor's lien at the time the same was delivered by Dean Gordon? A. Not to Mr. A. J. Staley's knowledge.

"5. Did Andrew J. Staley sign the note marked 'Exhibit 14,' in the amount of $400.88, dated January 1, 1926? A. No.

"6. Did Andrew J. Staley sign the mortgage marked 'Exhibit 15,' dated January 1, 1926, given to secure a note in the amount of $400.88? A. No.

"7. To whom did Dean Gordon deliver the deed marked 'Exhibit 15'? A. The evidence does not show but indicates that it was mailed to the Staley residence.

"8. When did Andrew J. Staley first see the deed marked 'Exhibit 15'? A. On or about June 18, 1927.

"9. When did Andrew J. Staley first know that the deed, marked 'Exhibit 15,' contained the vendor's lien clause? A. When this lawsuit was filed.

"10. Did Andrew J. Staley believe that Dean Gordon had delivered to Mrs. Staley the deed to the property, marked 'Exhibit 15,' with the vendor's lien clause? A. No.

"11. How long has Andrew J. Staley occupied the property involved in this action? A. Continuous since first contract, Sept. 1, 1919."

Plaintiff moved the court to set aside the answers, which motion was denied. Judgment was then entered for defendant. It is from this judgment that this appeal is taken.

Plaintiff argues that the answers to questions 1 to 6, inclusive, should have been set aside because they are contrary to the evidence and not supported by any credible evidence. The trouble with that

argument is that this court cannot be the judge of the credibility of witnesses. That is the function of the jury and the trial court. It is true that this jury was acting in an advisory capacity only, but the trial court heard the witnesses and saw them on the stand and refused to set aside the answers.

The defendant denied on the witness stand that he had signed the instruments. There were admitted specimens of his signature submitted to the jury for comparison with the claimed signature. The mortgagee was not able to testify that he saw defendant sign the note and mortgage. Under these circumstances this court is not able to conclude that the answers to the question under consideration were not sustained by sufficient evidence.

Plaintiff next argues that, even if the note and mortgage sued on were forgeries, still the evidence shows that these instruments were given to secure a valid indebtedness which was represented by the vendor's lien, and that he is entitled to recover the amount of that lien.

We will examine the undisputed evidence first. It is not disputed that defendant and his wife executed the lease and option to purchase on September 1, 1919; that on January 1, 1926, Dean Gordon gave defendant a deed, and that on that date there was a $600 mortgage on the real estate, which defendant assumed. What is disputed as to this transaction is that the vendor's lien heretofore set out in this opinion was reserved in this deed in the amount of $400.88. Plaintiff testified that this lien was also evidenced by a note and mortgage, which was not recorded; that it was reduced by payments to $353.58, and that on November 15, 1927, a new note and mortgage in the amount of $500 was executed by defendants and that he paid the difference between $500 and $353.58 to defendant. Defendant denied any knowledge of what plaintiff testified about subsequent to the delivery of the deed on January 1, 1926. The record discloses that the notary before whom the deed and the mortgage sued on were acknowledged was deceased at the time the action was brought, as was also the wife of defendant.

With reference to this feature of the case, the jury returned the answer to question No. 4. For convenience it will be again inserted in this opinion. It is as follows:

"4. Did the deed, marked 'Exhibit 13,' contain the clause reserving a vendor's lien at the time the same was delivered by Dean Gordon? A. Not to Mr. A. J. Staley's knowledge."

It will be noted that the jury did not find the reservation was not in the deed when it was delivered to the defendant.

It is hard to see how the jury made the finding they did make. There can be no doubt that the reservation was in the deed when it was recorded. There can be no doubt that the deed was mailed to defendants after it was recorded. Defendant testified that he examined the deed after it was delivered to him and that the reservation was not in it then.

The testimony on this point, however, is far from satisfactory. It is apparent that the wife of defendant carried on all the negotiations with plaintiff concerning the purchase of the property and the execution of the various instruments connected therewith.

The point in dispute upon which this case must turn is whether at the time defendant received the deed on January 1, 1926, he and his wife owed anything on the property besides the $600 mortgage, which is admitted. If he owed the $400.88, which is referred to in the vendor's lien, then the plaintiff in this case is entitled to recover it from him on the theory that, even if the mortgage sued on was a forgery, it was given to secure the payment of money which was actually received by defendant and used to pay off an encumbrance on the real estate in question.

The direct evidence on this point is that of Dean Gordon and defendant. Gordon testified that the $400.88 was due and testified to further details as to subsequent transactions. The defendant testified on direct examination that Gordon told him at the time he gave him the deed that everything was paid up but the $600 mortgage. On cross-examination, however, he testified differently. The most graphic way to describe that testimony is to include the pertinent part of it herein. It is as follows:

"Q. Now, at the time you obtained that deed, how much did you understand that you owed on your place yet? A. Just the mortgage; that $600 mortgage when it was supposed to come due.

"Q. Did you arrive at that conclusion, how did you arrive at it, that all you owed was the $600? Did any one tell you that was all that was due? A. Mr. Gordon did.

"Q. When did he tell you that? A. He told me that in his office.

"Q. That was before you got the deed or afterwards? A. Before I got my deed.

"Q. Did you, at the time you got this deed, did you go up and ask him for the deed, to make you a deed? A. No, sir.

"Q. Who entered into these negotiations for the deed? A. My wife.

"Q. Your wife. Was she representing you at that time? A. Yes, sir.

"Q. Did you ever go up to Mr. Gordon's office and figure out with him how much was still due on this contract? A. No, sir.

"Q. You never did? A. No, sir.

"Q. Then how do you know that there was some few hundred still remaining due on the contract? A. All I know was what Mr. Gordon said; there was $600 back on the contract.

"Q. Well, you just got through telling me that you never talked to him about it; that you never went up there to his office and figured up how much was due on it, didn't you? I will ask you again. Did you ever go up to his office and figure up how much was due on this contract? A. No, sir.

"Q. Did he ever come to your place and go over the figures with you? A. No, sir.

"Q. You say Mrs. Staley went up there and made the arrangements to get the deed? A. Yes, sir.

"Q. And that she was representing you at that time? A. Yes, sir.

"Q. And you stated that when you got that deed all that was due was the $600, and that that $400 item wasn't in there when you got the deed? A. No, sir.

"Q. Now how much did you owe Mr. Gordon at the time you got the deed? A. $600.

"Q. How do you arrive at that? How do you know that there was nothing due Mr. Gordon? A. That is what the wife told me.

"Q. Is that what you are basing all of your testimony on, just what she told you? A. Well, I wouldn't base all of it on that, but she was the principal one that looked after all of the business.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now you don't know of your own knowledge, then, how much was due Mr. Gordon at the time you got that deed? All that you know is what your wife told you about it? A. Yes.

"Q. Now, when you are making payments under this contract, who would take the payment up to Mr. Gordon? A. My wife.

"Q. Did you ever take any up there? A. No, sir.

"Q. But you say you have receipts for the amounts that you have paid on the contract? The amount you have paid Mr. Gordon? A. I think I have got them all.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. How much money have you paid on that contract, Mr. Staley? A. Twenty-three hundred and something, I suppose.

"Q. How do you arrive at that figure? A. How?

"Q. Just tell the court and jury how you know that you have paid $2,312? A. Well, I don't know hardly how I would do it.

"Q. As a matter of fact, you don't know how much has been paid on this contract, do you, only what some one else has told you? Can you answer the question? A. No, I wouldn't. I could not swear to it.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Can you tell the court and jury how much you paid aside from this $600? How much you paid Mr. Gordon from the time that you first entered into the contract up until the present date? A. I could not."

An examination of this testimony in its entirety leads us to the conclusion that defendant never was able to testify of his own knowledge that Gordon told him that he only owed the $600 at the time he reserved the deed. Neither was he able to testify of his own knowledge as to the amount actually paid on the contract. On the other hand, the plaintiff testified clearly and directly as to the payments, and his testimony is borne out by many circumstances.

In *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, in discussing the question of whether there was sufficient evidence to sustain the verdict of a jury this court said:

"Courts should be careful not to encroach upon the province of jurors when the facts, although undisputed, are such that the minds of candid persons may draw differing inferences and arrive at opposing conclusions. This wholesome rule, however, should not be stretched so far as to relieve the court from the solemn duty of deciding the issue in cases like this where such divergence cannot be found consistently with reason and justice. In such a situation the question is one of law only." (p. 483.)

Following this rule we have concluded that the trial court should have found from the evidence that at the time the deed was given to the real estate in question a vendor's lien was reserved in the amount of $400.88 in addition to the $600 mortgage, and that this lien had been reduced by payments to $353.58 at the time the note and mortgage sued on were executed.

Since we have arrived at that conclusion as to the facts, we will examine the authorities in point. It is well settled that the vendor of real estate may reserve a lien to himself in the instrument by which he conveys. (See *Smith v. Wyandotte County*, 113 Kan. 244; *Greeno v. Barnard*, 18 Kan. 518, also *Felzien v. Wieck*, 118 Kan. 194, 234 Pac. 944.)

This court has considered the question of the right of one who has loaned money on a mortgage which turns out to be void for the purpose of paying a prior valid mortgage to be subrogated to the rights of the owner of the prior valid mortgage. In *Zinkeison v. Lewis*, 63 Kan. 590, 66 Pac. 644, the action was to foreclose a mortgage. The husband testified that he had signed the wife's name to the instrument. The record disclosed that the forged mortgage was given to obtain money with which to pay off encumbrances then

existing on the land. The court held that the holder of the forged mortgage was entitled to be subrogated to the rights of the holder of the indebtedness that had been paid. The court used the following language:

"The facts bring the case within the authority of *Everston v. Central Bank*, 33 Kan. 352, 6 Pac. 605, where it was held that, if money is loaned on a forged mortgage, supposed to be valid, to be used, and which was used, to pay off a valid mortgage, the mortgagee or his assignee may be subrogated to the rights of the prior mortgagee, if there are no intervening liens or encumbrances. The general rule is that, where it is equitable and just that a person furnishing money to pay off a debt should be substituted for the creditor, he will be substituted and subrogated to all the rights held by the creditor." (p. 592.)

To the same effect is *Warne v. Morgan*, 68 Kan. 450, 75 Pac. 480. There the court held:

"Where one loans money which is actually used in paying off a valid encumbrance on property, whether real or personal, exempt or otherwise, with an agreement with the borrower that he shall have a valid mortgage on such property, and a mortgage is given which afterward proves to be void because of defective execution, such mortgagee is entitled, upon application, to be subrogated to the rights of the mortgagee whose mortgage he paid to the amount paid by him for the release."

That case cites and relies on *Crippen v. Chappel*, 35 Kan. 495, 11 Pac. 453, which has been followed many times. It contains the following language, which states the principle involved in so clear a manner that it cannot be improved upon. The court said:

"But the right of subrogation or of equitable assignment is not founded upon contract alone, nor upon the absence of contract, but is founded upon the facts and circumstances of the particular case and upon the principles of natural justice; and generally, where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in the place of the creditor, such person will be so substituted." (p. 499.)

The above language is in point here. Our examination of the record has convinced us that the mortgage sued on was given in part to secure the indebtedness that was an encumbrance on the real estate in question at the time the deed conveying the property to defendants was executed. The plaintiff was the assignee of the forged mortgage. The original mortgagee could have recovered on the original indebtedness and enforced it as a lien. His assignee is entitled to be subrogated to all his rights. Therefore, judgment should have been allowed in accordance with the prayer in the answer of the plaintiff to the cross petition of the defendant.

The judgment of the trial court is reversed with directions to enter judgment for plaintiff for $353.58, with interest, and foreclosing the vendor's lien pleaded by plaintiff in accordance with the prayer of the answer of plaintiff to the cross petition of defendant.

HUTCHISON, J., not sitting.