No. 34,230

M. J. FINNEGAN, *Appellant*, v. CHESTER E. IHINGER; JOSEPHINE IHINGER (THEO C. LANDON, *Appellee*), GEORGE COON, LEO SISCO and FRANK WHELAN, doing business as THE WHELAN LUMBER COMPANY, *Appellants*.

(92 P. 2d 538)

Opinion filed July 19, 1939.

*Frank E. Miller, E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, for the appellants.

*A. Harry Crane, Ward D. Martin* and *George E. S. Crane,* all of Topeka, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was originally an action to foreclose a mechanic's lien on real estate under the provisions of G. S. 1935, 60-1401. It expanded into a contest involving the priorities of various liens. The plaintiff, Finnegan, was denied a lien, and while he appears on the records here as an appellant, no abstract or brief is filed by his attorney. The defendant landowners, the Ihingers, have not appealed. The defendants George Coon, Leo Sisco and

Frank Whelan, the latter doing business as the Whelan Lumber Company, have appealed. Frank Whelan, however, subsequently dismissed his appeal.

The contest here is between the two remaining appellants, who claim first liens by virtue of G. S. 1935, 60-1401, and the appellee, Theo C. Landon, who claims a first lien as to certain amounts by virtue of a chattel mortgage on the building which was sold by her to the Ihingers and which was moved onto the real estate in question. Appellee also claims a first lien by virtue of a real-estate mortgage which she obtained on the premises from the Ihingers when she paid, at the request of the Ihingers, a former first real-estate mortgage on the land which had been given and recorded by the Ihingers about three years prior to the performance of labor and the furnishing of materials by appellants. This first lien appellee claims upon the theory of subrogation.

Appellee had taken a chattel mortgage upon the building in question for the purchase price thereof and for some other items. That mortgage was executed and recorded after the building was severed from the foundation on appellee's land and before it was moved from the land of appellee to the premises of the Ihingers. It is concerning the judgment which gave appellee priority of liens as to certain amounts that appellants complain.

The court made the following extensive findings of fact, which are not challenged:

"Finding number one contains nothing pertinent in this appeal.

"Finding number two describes the property on which the material was placed and labor performed by the various claimants.

"Finding number three in substance states that under contract between plaintiff and defendant Chester E. Ihinger, plaintiff moved the dwelling house from the Landon property to the Ihinger property. That the work was commenced on or about June 18, 1937, and completed on or about August 3, 1937, and that plaintiff filed his lien on or about October 16, 1937.

"Finding number four in substance states that pursuant to a contract with the Ihingers, defendant George Coon, commencing on March 8, 1937, furnished labor and material for excavation of a cellar on the premises referred to, that statement of his lien was regularly filed in the office of the clerk of the district court of Shawnee county.

"Finding number five concerns the lien of Cecil Thompson.

"Finding number six in substance is that pursuant to agreement Frank Whelan, doing business as The Whelan Lumber Company, furnished and delivered materials between April 15 and August 31, 1937, which were used in improving property described, and that his lien was regularly filed in the office of the clerk of the district court of Shawnee county.

"Finding number seven concerns the lien of Mervin Nicolay.

"Finding number eight concerns the lien of Leo Sisco.

"9. That during the last of January or the forepart of February, 1937, the defendants Chester E. Ihinger and Josephine Ihinger entered into negotiations for the purchase of two houses, then located upon the property belonging to the defendant, Theo C. Landon, and that as a result of such negotiations Theo C. Landon agreed to take $1,000 as the purchase price of the two houses.

"That subsequently, and about March 8, 1937, Josephine Ihinger sold one of said houses to A. E. Sisco for the sum of $450, upon which the purchaser paid the sum of $400, which was turned over by Josephine Ihinger to Theo C. Landon, and there remains due and unpaid on the purchase price of said house from Chester E. Ihinger and Josephine Ihinger to Theo C. Landon, the sum of $50.

"That thereafter said house was removed from the property owned by Theo C. Landon.

"10. That subsequent to the sale of the first house it was agreed between Theo C. Landon and the defendant Ihingers that the purchase price of the second house was to be $550, which the Ihingers agreed to pay.

"That thereafter and on the 23d day of April, 1937, Theo C. Landon executed to Chester E. Ihinger a bill of sale for said second house which is recorded in book 37 at page 3 in the records of the register of deeds of Shawnee county, Kansas, on April 23, 1937; and at the same time and as part of the same transaction, Chester E. Ihinger and Josephine Ihinger executed and delivered a chattel mortgage upon said house to the defendant, Theo C. Landon, in the amount of $750, which is recorded in book 37 at page 2 in the office of the register of deeds of Shawnee county, Kansas, on April 23, 1937, $550 of which amount represented the unpaid purchase price of said house.

"That on April 23, 1937, said house, which was the subject of said bill of sale and chattel mortgage, had been severed from its foundation, but not yet removed from the real estate owned by Theo C. Landon.

"11. That prior to and during all of the times referred to in these findings, the Home Owners' Loan Corporation held a mortgage on the premises owned by the defendant Ihingers which is involved in this action, and also upon other real estate adjacent thereto, in the amount of $2,458, bearing date of June 29, 1934, and recorded on the 21st day of August, 1934, in book 687 at page 489 of mortgages in the office of the register of deeds of Shawnee county, Kansas, which was a first lien upon said real estate.

"That some time prior to March 4, 1937, the defendants Ihingers made written application to the Home Owners' Loan Corporation for a partial release of said mortgage as to the particular tract to which they contemplated moving the house in question.

"12. That on or about March 19, 1937, the defendant Ihingers entered into a contract with W. H. Spangler to remove the house in question to the property owned by them for an agreed price of $600. That after said Spangler had raised the house from its foundation and placed it upon timbers preparatory to moving the same, he requested that the defendant Ihingers pay him the sum of $200 upon his contract. That the defendant Ihingers thereupon applied to Mrs. Theo C. Landon for a loan of $200 with which to pay said

Spangler's demand; and on March 19, 1937, Theo C. Landon delivered to Chester E. Ihinger her check in the amount of $200 (defendant's exhibit 1); which check was endorsed by Chester E. Ihinger and delivered to W. H. Spangler.

"That said sum of $200 was later included in the chattel mortgage in the amount of $750 executed by the Ihingers to Theo C. Landon and referred to in finding No. 10.

"That thereafter W. H. Spangler breached his contract for moving of said house.

"13. That the defendant Ihingers were without funds to finance the improvements necessary upon the house in question and the moving of the same and other expenses incident thereto, and made efforts to secure funds therefor. Among others to whom they made application was the defendant, Theo C. Landon.

"That Theo C. Landon stated that she would assist them; but at no time did she promise to finance the expenses incident to the removal and improvement of said house beyond the amounts and in the manner stated in these findings.

"That Theo C. Landon did not agree with any creditor of the defendant Ihingers to finance any bills incurred by them incident to the moving or improvement of said house, for which liens or claims have been filed in this case.

"14. That the defendant Ihingers represented to Theo C. Landon that the Home Owners' Loan Corporation would not allow the house in question to be placed upon the foundation prepared for it on the Ihingers' property until a partial release of its mortgage on said property had been obtained, and requested that she furnish the money to secure such release. That pursuant thereto Theo C. Landon agreed to and did loan to the Ihingers the sum of $872, which was used by the said Ihingers to procure a partial release of the mortgage held by the Home Owners' Loan Corporation.

"That a portion of said $872 was applied upon the principal of said mortgage, part in payment of interest on said loan which was then due and unpaid, and part in payment of taxes then due upon said real estate.

"That the payment of said $872 was evidenced by a check drawn by Theo C. Landon on the National Bank of Topeka on June 15, 1937, payable to the order of Chester E. Ihinger (defendant's exhibit 4); and at the time of the delivery of said check Theo C. Landon advised the Ihingers that she would loan them no more money.

"15. That on June 15, 1937, to secure the payment of said loan of $872, together with other money owing to her by Chester E. Ihinger and Josephine Ihinger, the said Ihingers executed and delivered to Theo C. Landon a realestate mortgage in the amount of $1,672 upon the premises described in finding No. 2. That said amount of $1,672 was made up of the $872 loan referred to in finding No. 14, the $550 remaining unpaid on the purchase price of said house, the $200 advanced to pay the demand of W. H. Spangler referred to in finding No. 12, and $50 representing the unpaid balance due upon the same of the first house.

"That said mortgage was recorded on June 16, 1937, in book 740 of mortgages, at page 575 of the records of the register of deeds of Shawnee county, Kansas.

"16. That on June 15, 1937, the defendant Ihingers entered into an agreement with Theo C. Landon to pay to her the sum of $25 per month from rentals collected by them from the property at 614 Grand Court, in Highland Terrace Addition to the city of Topeka, Kan., said amount to be applied upon their indebtedness as aforesaid; but that no money has been paid by the Ihingers, or collected by Theo C. Landon, under said agreement.

"17. That under date of May 18, 1938, the Home Owners' Loan Corporation, by Bernard Morman, its Omaha regional treasurer, executed and subsequently delivered to the defendant Ihingers a partial release of its mortgage, particularly as to the tract involved in this action and referred to in finding No. 2. That such partial release of said mortgage was retained by the defendant Ihingers after its delivery to them until the trial of this case, and was never placed on record by them.

"That Theo C. Landon subsequently obtained from the Home Owners' Loan Corporation a copy of said release.

"18. That under the terms of the mortgage referred to in finding No. 15, the defendant Ihingers were to keep the property involved in this action insured, but that they failed to do so; and on the 25th day of July, 1937, Theo C. Landon procured a policy of insurance in the amount of $3,500 fire and $3,500 wind and tornado insurance upon said property, for which she paid a premium of $38.58. That attached to said policy (defendant's exhibit No. 10) is a 'standard mortgage clause' providing that loss, if any, shall be paid to Theo C. Landon, mortgagee, as her interest may appear.

"19. That at no time during the transactions referred to in these findings was Chester E. Ihinger or Josephine Ihinger, his wife, the agent or representative of the defendant, Theo C. Landon.

"20. That in the first amended petition of the plaintiff, M. J. Finnegan, he pleads that he has filed a mechanic's lien against the property of the defendant, Theo C. Landon, which is recorded in book 8, at page 29, of the record of mechanics' liens in the office of the clerk of the district court of Shawnee county, Kansas.

"That plaintiff has failed to prove that he is entitled to any lien against the property of Theo C. Landon, and that said lien so filed should be canceled and released of record."

The conclusions of law were as follows:

"1. That Theo C. Landon is entitled to recover judgment against the defendants Chester E Ihinger and Josephine Ihinger upon their promissory notes and mortgage in the sum of $1,672, with interest thereon at the rate of 6% per annum from the 15th day of June, 1937, to this date, or an aggregate sum of $1,784.86.

"That of said sum of $1,672, Theo C. Landon is entitled to a first lien upon the premises in question in the amount of $872, plus interest from June 15, 1937, by reason of being subrogated in that amount under the prior lien of the mortgage executed in 1934 and held by the Home Owners' Loan Corporation.

"2. That under the terms of the real-estate mortgage for $1,672, Theo C. Landon is entitled to recover from the defendants Chester E. Ihinger and

Josephine Ihinger the sum of $38.58 with interest thereon at the rate of 6% per annum from the 26th day of July, 1937, to this date, or the aggregate sum of $40.87 which, together with the $872 referred to in conclusion No. 1, is a first lien upon said property in favor of Theo C. Landon.

"3. That Theo C. Landon at all times has had a first and prior lien upon the house purchased by the defendants Chester E. Ihinger and Josephine Ihinger for the unpaid purchase price thereof until April 23, 1937, the date of the execution of the bill of sale and chattel mortgage; and thereafter had a first and prior lien upon said house by virtue of said chattel mortgage.

"That the mechanics' lien claimants herein had liens only upon whatever interest Chester E. Ihinger and Josephine Ihinger had in said house; and in conveying the title to said house and changing the form of the security for the existing debt due Theo C. Landon for the purchase price thereof, no other lien could intervene and become superior thereto.

"4. That as a part of said sum of $1,672 was included an amount of $550 representing the purchase price of the house moved on to the premises of the Ihingers. That by reason of the lien that Theo C. Landon had upon said house for its purchase price and under said chattel mortgage, she is entitled to a lien thereon inferior to that mentioned in conclusions Nos. 1 and 2; but superior to the liens claimed by the mechanics and materialmen hereinafter referred to.

"5. That the following-named parties are entitled to recover judgments against the defendants Chester E. Ihinger and Josephine Ihinger for the amounts set forth herein:

"M. J. Finnegan, $600 with interest at 6% from August 3, 1937, to this date, or a total of $635.70.

"George Coon, $78, with interest at 6% from November 23, 1937, to this date, or a total of $81.22.

"Frank Whelan, doing business as the Whelan Lumber Company, $358.30 with interest at 6% from September 1, 1937, to this date, or a total of $378.

"Cecil Thompson, $55 with interest at 6% per annum from September 15, 1937, to this date, or a total of $57.85.

"Mervin Nicolay, $42 with interest at 6% per annum from August 15, 1937, to this date, or a total of $44.41.

"Leo Sisco, $128 with interest at 6% per annum from June 1, 1938, to this date, or a total of $129.28.

"6. That the amounts referred to in conclusion No. 5 are secured by mechanics' liens filed by the respective claimants, and in the aggregate constitute a third lien upon the premises described in finding No. 2.

"7. That the defendant Theo C. Landon has a lien upon the house located on the premises in question in the amount of $216.33 for money advanced by her to the Ihingers, and paid to W. H. Spangler; which lien is junior and inferior to the liens heretofore found.

"8. That the sum of $750 secured by the chattel mortgage referred to in finding No. 10 has never been paid nor released. That the real-estate mortgage referred to in finding No. 15 was taken as additional security for the items included in said chattel mortgage.

"9. That the plaintiff M. J. Finnegan, upon the issues presented against the defendant Theo C. Landon, and under the various pleadings filed herein, is not entitled to recover, and the mechanic's lien filed by him upon the property of Theo C. Landon on the 16th day of October, 1937, and recorded in book 8 of Mechanics' Liens, at page 29, in the office of the clerk of the district court of Shawnee county, Kansas, should be released, extinguished and canceled of record.

"10. That the lien claimants herein are charged with constructive notice of the bill of sale and chattel mortgage recorded on April 23, 1937.

"11. That the costs of this action be taxed against the defendants Chester E. Ihinger and Josephine Ihinger."

Judgment was rendered in conformity with the conclusions of law. Appellants contend the findings of fact do not support the conclusions of law. In this connection appellants make two general contentions. One contention is that appellee was not entitled to be subrogated to the rights of the holder of the former real-estate mortgage. They urge appellee was a mere volunteer as to the payment of that mortgage and as such volunteer was not entitled to subrogation. The principal case relied upon is *Crippen v. Chappel*, 35 Kan. 495, 11 Pac. 453. That case, however, supports appellee's contention, who also relies thereon. It was there held:

"Where a stranger, a mere volunteer, a mere intermeddler, pays the debt of another, he cannot be subrogated to the rights of the creditor.

"But where a person pays a debt, which is secured by a mortgage, at the instance and request of the debtor, with the agreement that the person paying the debt shall have a mortgage lien upon the real estate then mortgaged to secure such debt, and a new mortgage is given, but is void, the party furnishing the money may be subrogated to the rights of the original creditor." (Syl. ¶¶ 1, 2.)

Appellee, in the instant case, was not a mere volunteer, nor was she an intermeddler in the payment of the mortgage debt. She paid the mortgage debt at the express request of the mortgagors when the mortgage was subject to foreclosure by reason of default in the payment of interest and taxes. The payment was for the benefit of the mortgagors, as the mortgagee refused to delay foreclosure if the building was to be moved onto the premises. The Ihingers wanted the building, and appellee paid the mortgage. The existing recorded real-estate mortgage, which appellee paid, was clearly prior to any lien claims of appellants. Subrogation is an equitable doctrine, and appellee, upon well-established equitable principles, was clearly entitled to be subrogated to the rights of the former holder of the real-estate mortgage. (*Yaple v. Stephens,* 36 Kan. 680, 687, 14 Pac. 222;

*Bowling v. Garrett,* 49 Kan. 504, 523, 31 Pac. 135; *Armstead v. Neptune,* 56 Kan. 750, 753, 44 Pac. 998; *Zinkeison v. Lewis,* 63 Kan. 590, 593, 66 Pac. 644; *Warne v. Morgan,* 68 Kan. 450, 75 Pac. 480; *Crane v. Daniel,* 121 Kan. 3, 5, 245 Pac. 1017; *Federal Land Bank v. Hanks,* 123 Kan. 329, 254 Pac. 1040; *Kuske v. Staley,* 138 Kan. 869, 28 P. 2d 728.)

What about appellants' contention that their liens should have been held to be prior to the chattel mortgage lien of appellee? The claim of appellant Coon was based upon labor performed in excavating the basement and for two hours of grading work upon the premises. The excavating work was commenced on March 8, 1937. The claim of the appellant Sisco was based upon labor performed upon the foundation of the building prior to the placement of the building thereon, and was commenced April 1, 1937.

It will be observed the court allowed priority to appellee on her chattel mortgage only to the extent it constituted the purchase price of the building. The building on which the chattel mortgage was given constituted personalty. The building was not constructed on the land of the Ihingers. It was a two-story frame residence building and was moved from the land of appellee across the highway onto the land of the Ihingers. Title to the building was conveyed by bill of sale. The chattel mortgage was executed and recorded after the building was severed from the land, but before it was moved from the land of appellee. The chattel mortgage provided that the building constituted personalty and remained personalty until the mortgage debt was paid. The court, in the instant case, found it was the intention of the parties the building should constitute and remain personalty until the chattel mortgage was paid. The finding is not disputed here and indeed could not be disturbed on appeal, as there is ample evidence to support it. That the parties to the transaction had the right to agree the building should remain personalty and that their rights should be determined accordingly is no longer open to dispute under the numerous decisions of this court. (*Eaves v. Estes,* 10 Kan. 314; *Cent. Branch Rld. Co. v. Fritz,* 20 Kan. 430, 434, 436; *Comm'rs of Rush County v. Stubbs,* 25 Kan. 322; *Docking v. Frazell,* 38 Kan. 420, 17 Pac. 160; *Bromich v. Burkholder,* 98 Kan. 261, 265, 158 Pac. 63; *Lumber and Grain Co. v. Eaves,* 114 Kan. 576, 580, 220 Pac. 512; *McCrae v. Bradley Oil Co.,* 148 Kan. 911, 913, 84 P. 2d 866.)

In the early case of *Comm'rs of Rush County v. Stubbs,* supra, it was said:

"Now from this statement it it clear that this building was at one time the property of the plaintiff; that it never intended to abandon the ownership; and that the building could be moved without destruction. It was placed by the plaintiff upon land to which defendant Stubbs had an inchoate title, with the understanding that it should remain the property of the plaintiff. How did the plaintiff lose title? The manner in which it was annexed to the ground did not prevent the intention of the parties from remaining effective. The building was, it is true, on a stone foundation, but it was held there by its own weight. That it could be moved, without destruction, is evident not merely from the description of the building, but also from the fact that it had been once moved . . . The intention of the parties made this building personalty, and neither the manner of annexation nor any other matter prevented this intention from being carried into effect." (pp. 324, 325.)

In *Docking v. Frazell,* supra, it was held:

"A building occupied for a hotel and moved by a tenant upon a vacant city lot, which is held under a lease for a term of years, in which it is provided that at its expiration the lot shall be surrendered in the same condition it was at the date of the lease, is personal property.

"A chattel mortgage given upon such hotel building would be valid, and a foreclosure and sale thereunder would convey the property to the purchaser at such sale." (Syl. ¶¶ 1, 2.)

That the building, in the instant case, must be regarded as personalty cannot be doubted.

This brings us to the question of whether the liens of appellants are prior to that portion of the chattel mortgage which represented the purchase price of the building. The pertinent portion of G. S. 1935, 60-1401, relied upon by appellants, provides:

"Such lien shall be preferred to all other liens or encumbrances which may attach to or upon said land, building, or improvement, or either of them, subsequent to the commencement of such building, the furnishing or putting up of such fixtures, or machinery, the planting of trees, vines, plants or hedge, the building of such fence, footwalk, or sidewalk, or the making of any such repairs or improvements."

The building was personalty. It remained personalty and remained subject to the recorded chattel mortgage. The lien of appellants could attach only to such interest in the property of the Ihingers as the Ihingers had, and to no other. Appellants knew the building was not erected on the premises, but was being moved onto the premises. They were placed on inquiry to ascertain the title to such personalty. The means of such knowledge was at hand. Had they made inquiry they would have ascertained the fact that the building had not become a part of the realty. In *Lumber and Grain Co. v. Eaves,* 114 Kan. 576, 220 Pac. 512, in which a lumber

company took a real-estate mortgage for material furnished, it was said:

"At the time of the delivery and recording of the bank's chattel mortgage, the plaintiff, because of the conditions, was bound to know that the building was personal property.

"Section 1 of chapter 234 of the Laws of 1919 provides:

" 'Every mortgage or conveyance intended to operate as a mortgage of personal property, . . . shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers. and mortgagees in good faith unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds,' etc.

"This statute, with slight modifications, has been the law for a long period of years. If, under its provisions, a chattel mortgage is void as to subsequent purchasers and mortgagees in good faith if not recorded, conversely, it is valid as to them if recorded." (p. 581. See numerous cases therein cited.)

In a specially concurring opinion by Mr. Justice Burch it was said:

"I concur in the result, for the following reasons: The lumber company sold the lumber for the building to its mortgagor. When the lumber company took its mortgage it was charged with notice of what 'the record revealed and suggested regarding the mortgagor's land title. The record disclosed the mortgagor did not have title until long after he purchased the lumber and erected the building. *This fact suggested some kind of arrangement under which the building was placed on the land. Inquiry would have revealed the building was a chattel when erected, and was covered by chattel mortgage when title was taken."* (Italics inserted.) (p. 582.)

Moreover, the portion of the chattel mortgage which was allowed as a prior lien constituted the purchase price of the building and as such was entitled to priority over the claims of appellants. (*Pratt v. Topeka Bank,* 12 Kan. 570; *Greeno v. Barnard,* 18 Kan. 518; *Bond v. Westine,* 128 Kan. 370, 373, 278 Pac. 12; *Noll v. Graham,* 138 Kan. 676, 27 P. 2d 277, and cases therein cited.) In the Noll case it was said:

"The general rule is that a mortgage given for the unpaid part of the purchase price, simultaneously with a deed for the property and as a part of the same transaction, takes precedence of prior judgments and all other existing and subsequent claims and liens of every kind against the mortgagor. (*Foster v. Bank,* 71 Kan. 158, 80 Pac. 49, 114 A. S. R. 470, 6 Ann. Cas. 44; *Mortgage Co. v. Winters,* 94 Kan. 615, 146 Pac. 1012, Ann. Cas. 1916C 956; *Kuehn v. National Bank,* 117 Kan. 717, 232 Pac. 1060; 41 C. J. 528; 19 R. C. L. 416.) Although it has been held in some cases that purchase-money mortgages are subordinate to liens for work authorized by the vendor or done with his knowledge or consent. (See *White v. Kincade,* 95 Kan. 466, 148 Pac. 607, Ann. Cas. 1916B 667.) For a note on priority as between mechanics' liens and purchase-

money mortgage, see 72 A. L. R. 1516. . . . The judgment of the lower court allowing the mechanics' liens priority was erroneous. The appellant should have been allowed a first lien insofar as the purchase price included in its mortgage is concerned, the mechanics' liens should have been allowed as co-ordinate second liens, and the balance of appellants' mortgages should have been allowed as a third lien." (pp. 683-686.) (See, also, G. S. 1935, 67-305, and *Home Owners' Loan Corp. v. Humphrey*, 148 Kan. 779, 85 P. 2d 7.)

Appellants urge appellee abandoned her right to consider the building as personalty when she later took a real-estate mortgage covering the entire debt and purchased insurance, under the insurance clause of the real-estate mortgage, when the Ihingers failed to provide the insurance. The contention cannot be sustained. Neither the chattel mortgage nor the rights acquired thereunder by appellee were ever abandoned. The chattel mortgage was not released, and the record discloses the real-estate mortgage was taken as additional security. Appellee received only one satisfaction of the amount for which the chattel mortgage was given, and the fact that such amount was also covered by the real-estate mortgage did not vitiate the pertinent fact that the extent to which priority was given, whether under the chattel mortgage or under the real-estate mortgage, constituted only the purchase price of the building. The court was entirely within the law when it divided the mortgage so as to allow priority to the extent of the purchase price. In *Bond v. Westine*, supra, it was said:

"It has been held that a mortgage may be divided; that so far as it is a purchase-money mortgage it constitutes a lien on the property prior to other liens, while the part which does not represent purchase money does not. (*Pratt v. Topeka Bank*, 12 Kan. 570; *Greeno v. Barnard*, 18 Kan. 518.) A similar question was considered in *New Jersey Bldg., Loan and Invest. Co. v. Bachelor*, 54 N. J. Eq. 600, 35 Atl. 745, where it was said substantially that a vendee of land, simultaneously with the delivery of his deed, gave a mortgage to secure borrowed money, a part of which was used to pay for the land, and it was held that as to such part the lien of such mortgage was prior to a mechanic's lien for improvements made in part before delivery of the deed to the vendee, and under a contract with the vendee made before such delivery, but as to the balance of the mortgage the mechanic's lien was prior." (p. 373.)

To the same effect is *Noll v. Graham*, supra, 685.

Authorities cited from other jurisdictions on various contentions of appellants have been examined. They are not controlling in view of our own decisions, which adequately cover every issue raised.

The judgment is affirmed.

HARVEY, J., dissents.