(772 P.2d 1255)

No. 62,350

NATIONAL SUPPLY COMPANY, A Division of ARMCO, INC., *Plaintiff/Appellant*, v. CASE OIL & GAS, INC., *et al., Defendants,* and KEM CORP., a/k/a KINCAID EQUIPMENT MANUFACTURING CORP., *Intervenor/Appellee.*

Opinion filed April 28, 1989.

*Ron D. Beal,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellant.

*Robert E. Nugent, III,* of Morris, Laing, Evans, Brock & Kennedy, of Wichita, for appellee.

Before RULON, P.J., REES, J., and DEAN J. SMITH, District Judge, assigned.

REES, J.: This is an oil and gas lien foreclosure action. The sole subject for our review is a priority dispute between two creditors, plaintiff National Supply Company (National) and intervenor KEM Corp. (KEM).

At all times material herein, defendant Case Oil & Gas, Inc., (Case) owned a working interest in an oil and gas leasehold and was the lease operator. The underlying lease involved covers a quarter section in Pratt County. The leasehold is commonly referred to as the Huitt Lease.

National furnished materials and services to the lease for its improvement and operation. The materials and services were furnished and performed during the period from February 14, 1986, to March 27, 1986. To secure the indebtedness owed to it for the materials and services furnished, National timely filed a proper oil and gas lien statement on July 15, 1986. See K.S.A. 55-207, 55-209. As provided by K.S.A. 55-207, the lien attached to the leasehold and the fixtures and appliances thereon and it became preferred to all other liens or encumbrances that might attach to the leasehold and its fixtures and appliances subsequent to February 14, 1986, the date National commenced its

furnishing of materials and performance of services. K.S.A. 55-207; *D Oil, Inc. v. Brungardt,* 13 Kan. App. 2d 142, 144, 764 P.2d 851 (1988), *rev. denied* 244 Kan. 736 (1989).

Also on February 14, 1986, Case purchased a pumping unit from KEM. In payment, Case gave KEM a promissory note payable on demand. Case also gave KEM a security agreement. The note and security agreement were both dated February 14, 1986, and they were properly executed. In addition, signed financing statements were given to KEM. Timely and proper filings of the financing statement were made on February 20, 1986. Accordingly, KEM was the holder of a perfected purchase money security interest.

The pumping unit was delivered to and physically placed on the lease on February 14, 1986.

As a part of its resolution of the interests and rights of the numerous parties to this lawsuit, the trial court held that, as to the security interests of National and KEM in and to the pumping unit, KEM's interest had priority. National has appealed from that decision.

National has argued that Article Nine of the Uniform Commercial Code (K.S.A. 84-8-101 *et seq.*) does not apply to situations such as that now involved. It is said that resolution of a priority dispute between holders of nonpossessory statutory liens and security interests is not to be governed by Article Nine. The argument is persuasive. See K.S.A. 84-9-104(c); K.S.A. 84-9-310; Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 13.09, p. 13-26 (2d ed. 1988); Vagts, *The Impact of the Uniform Commercial Code on the Oil and Gas Mortgage,* 43 Tex. L. Rev. 825, 852 (1965). Furthermore, in its brief and at oral argument, KEM has agreed that Article Nine is inapplicable for present purposes.

As we must, we turn to other statutory provisions concerning the question of priority.

Referring to K.S.A. 55-207, National suggests that, for the purpose of determining priority, its lien should be deemed to have attached as of November 26, 1985; that is the date when another creditor, Halliburton Company, commenced furnishing materials and services. No particular reasoning is presented for this application of the statute. We fail to find justification for that position. It is contrary to the rule that an oil and gas mechanic's

lien "dates from the time of the furnishing of the [materials and services], and when the lien statement is [timely filed], . . . it dates back to the first furnishing of such [materials and services]." *Oil Well Supply Co. v. First Nat. Bank of Winfield, Kan.,* 106 F.2d 399, 404 (10th Cir. 1939). In determining what furnishing of goods or services establishes the date a lien attaches, the following UCC comment is instructive:

"[Some] statutory liens are expressly subordinated to consensual security interests; these include the oil and gas mechanic's lien, which is preferred only to encumbrances attaching *subsequent to the commencement of the work which forms the basis for the lien* (K.S.A. 55-207) . . . ." (Emphasis added.) K.S.A. 84-9-310, Kansas Comment 1983.

See also *Moyer v. Hezlep,* 123 Kan. 735, 736-37, 257 Pac. 229 (1927) (in an oil and gas mechanic's lien case, the court indicated that a lien attached when the lien claimant first commenced his work); *cf. Construction Materials, Inc. v. Becker,* 8 Kan. App. 2d 394, 398, 659 P.2d 243, *rev. denied* 233 Kan. 1091 (1983) (a mechanic's lien attaches the date the *claimant* first furnishes goods or services).

National first furnished materials and services on February 14, 1986; therefore, its lien attached on February 14, 1986. K.S.A. 55-207 does not alter this conclusion. The proviso in that statute allows a claimant to file one lien statement for any materials or services provided in a four-month period regardless of whether the materials or services are provided in relation to one or many wells and regardless of whether the materials or services provided are the result of one or many contracts. K.S.A. 55-207. The proviso does not state that the liens of multiple claimants all attach the date materials or services are provided by the first supplier.

Having determined that National's lien attached on February 14, 1986, we turn to the question of whether KEM's February 14, 1986, security interest attached subsequent to National's lien, thus giving National priority.

"Oil and gas lien laws confer special privileges, are to be strictly construed against one claiming the privilege, and their scope is not to be extended beyond that clearly granted by the legislature. [Citation omitted.]" *Calvert Western Exploration Co. v. Diamond Shamrock,* 234 Kan. 699, 707, 675 P.2d 871 (1984).

The word "subsequent" has a commonly understood meaning,

"[f]ollowing in time; coming or being later than something else; succeeding." Black's Law Dictionary 1596 (4th ed. rev. 1968).

In this case, both liens attached on February 14, 1986. KEM's security interest was not "subsequent" to the plaintiff's lien; National is not entitled to priority by virtue of K.S.A. 55-207.

Aside from whether KEM's security interest is "subsequent" to National's lien, National is not entitled to priority for another reason. KEM has priority because of its purchase money security interest.

In *Finnegan v. Ihinger*, 150 Kan. 357, 92 P.2d 538 (1939), a pre-Code case, one issue was whether a purchase money chattel mortgage effective April 23, 1937, was entitled to priority over two mechanics' liens which were effective March 8, 1937, and April 1, 1937, respectively. The mechanic's lien statute, which was very similar to the pertinent provision of K.S.A. 55-207, provided:

" 'Such [mechanic's] lien shall be preferred to all other liens or encumbrances which may attach to or upon said land, building, or improvement, or either of them, subsequent to the commencement of such building, the furnishing or putting up of such fixtures, or machinery, the planting of trees, vines, plants or hedge, the building of such fence, footwalk, or sidewalk, or the making of any such repairs or improvements.' " 150 Kan. at 365.

Despite this language, the court held that the purchase money chattel mortgage was entitled to priority over the mechanic's lien. 150 Kan. at 366. The court noted that the mechanics' liens could attach only to the interest of the person for whom the goods or services were provided. 150 Kan. at 365.

By statute, an oil and gas mechanic's lien in Colorado attaches to specified property " '*belonging to the party* or parties contracting with the lien claimants . . . *to the extent of the right, title, and interest of the owner*, part owner or lessee . . . and such lien shall extend to any *subsequently acquired interest* of any such owner, part owner or lessee.' (Emphasis added.)" *Chambers v. Nation*, 178 Colo. 124, 128, 497 P.2d 5 (1972). In determining whether a prior oil and gas mechanic's lien had priority over a subsequent purchase money security interest, the *Chambers* court held: "[A] purchase money security interest in property takes precedence over any pre-existing lien. [Citations omitted.]" 178 Colo. at 129. The court recognized that a lien can attach only to the extent of the interest of the party for whom the goods or services were provided. The court stated: "If, as in this

case, the property comes into the hands of the purchaser already encumbered with a purchase money lien, a prior mechanic's lien remains subordinate to the purchase money mortgage, [citations omitted]; and it cannot displace the security interest which is the subject matter of the purchase money agreement." 178 Colo. at 129.

Here, KEM sold a pumping unit to Case, loaned Case money for the purpose, and took a security interest in the unit. The pump came into Case's possession burdened with the purchase money security interest and it continued to be burdened with the purchase money security interest while it was used on the well. Regardless of whether the plaintiff's oil and gas mechanic's lien attached prior or subsequent to the purchase money security interest, the plaintiff's lien was not entitled to priority over the purchase money security interest.

Although the trial court's rationale for granting priority to KEM differed somewhat from the analysis we have set out, its decision should be affirmed. See *City of Overland Park v. Barnett*, 10 Kan. App. 2d 586, 596, 705 P.2d 564 (1985) (Rees, J., concurring).

Affirmed.